IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

In re the Application of                    :

Kayat Trading Limited,                      :

               Petitioner,    :       Misc. Docket _____

For an Order To Take Discovery of           :       05MBD 10147 GAO

Genzyme Corporation,                        :

               Respondent,    :

Pursuant to 28 U.S.C. § 1782.               :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

**PETITION AND MEMORANDUM OF LAW IN SUPPORT OF PETITION FOR
DISCOVERY PURSUANT TO 28 U.S.C. § 1782**

Preliminary Statement

Petitioner Kayat Trading Limited ("Kayat") respectfully prays for an order, in the form attached to the Order To Show Cause, pursuant to 28 U.S.C. § 1782 requiring respondent Genzyme Corporation ("Genzyme") to produce documents and provide testimony for use in legal proceedings between them in Nicosia, Cyprus.

In that lawsuit pending in the District Court of Nicosia (the "Cypriot Action"), Kayat, a Cypriot company, has sued Genzyme of Cambridge, Massachusetts for providing defective melatonin product in breach of an exclusive distribution agreement, having fraudulently promoted its melatonin product to Kayat in communications from Genzyme's Cambridge headquarters at the same time knowing, but not disclosing, that Genzyme was discontinuing its

1

melatonin product line.[1] Ladas Aff. ¶ 4.1. The action was commenced on July 9, 2002. *Id.* ¶ 3, Exs. AGL1A-1E. Respondent Genzyme challenged the Cypriot court's jurisdiction, *id.* ¶ 5.1, but the court ruled against it on March 31, 2004. *Id.* ¶ 5.2, Exs. AGL3A, AGL3B. Kayat filed a detailed statement of claims on November 24, 2004. *Id.* ¶ 6.1, Exs. AGL4A, AGL4B.

**Discovery Sought.** Petitioner Kayat respectfully requests this Court's aid in discovery of information as to Genzyme's internal plans for its melatonin line, its discontinuation thereof and its contemporaneous representations to Kayat. This information is uniquely in the possession of Genzyme – expected to be located at its Cambridge headquarters – and is information that Genzyme would have had to produce if it had succeeded in forcing Kayat to sue here instead of in Cyprus.

**Section 1782(a).** Congress authorized in the Judicial Code a federal district court to provide judicial assistance to an interested person by ordering the production of documents or the giving of testimony for use in a foreign proceeding. It provides in pertinent part that:

> (a) The *district court of the district in which a person resides* or is found may order him to *give his testimony* or *statement or to produce a document* or other thing *for use in a proceeding in a foreign* or international *tribunal*, . . . The order may be made . . . *upon the application of any interested person* and may direct that the testimony or statement be given, or the document or other thing be produced, before a person appointed by the court. By virtue of his appointment, the person appointed has power to administer any necessary oath and take the testimony or statement. The order may prescribe the practice and procedure, which may be in whole or part the practice and procedure of the foreign country or the international tribunal, for taking the testimony or statement or producing the document or other thing. To the extent that the order does not prescribe otherwise, the testimony or statement shall be taken, and the document or other thing produced, *in accordance with the Federal Rules of Civil Procedure.*
>
> . . . .

28 U.S.C. § 1782(a) (emphasis added). Last summer, in *Intel Corp. v. Advanced Micro*

---

[1] Affidavit of Andreas G. Ladas executed on March 23, 2005, annexed to the Order To Show Cause ("Ladas Aff.").

2

*Devices, Inc.*,[2] the Court rejected a foreign-discoverability rule previously applied by the First Circuit that would preclude assistance if the foreign jurisdiction did not provide for the discovery requested.[3] The discovery requested here is squarely supported by the policies laid down by Congress and the Court and should be granted in the form of the proposed order.

## Argument

**I.    The Discovery Requested Squarely Meets 28 U.S.C. § 1782(a) Requirements.**

The United States Court of Appeals, which is confronted with the great majority of the appeals of section 1782(a) cases – and has been supported by the United States Supreme Court in the *Intel* decision – has enunciated the following elements of a section 1782(a) request:

> This court has distilled from [the section 1782(a)] language the following basic requirements for its invocation: (1) that the person from whom discovery is sought resides (or is found) in the district of the district court to which the application is made, (2) that the discovery be for use in a proceeding before a foreign tribunal, and (3) that the application be made by a foreign or international tribunal or "any interested person."

*In re Esses*, 101 F.3d 873, 875 (2d Cir. 1996) (per curiam), *citing In re Aldunate*, 3 F.3d 54, 58 (2d Cir.), *cert. denied*, 510 U.S. 965 (1993).   The circumstances here clearly meet the requirements of the statute:

(1)    *Genzyme resides in the District of Massachusetts.*  Genzyme is incorporated in Massachusetts and is headquartered in Cambridge, Massachusetts.

(2)    *Genzyme's testimony and documents are requested for use in a proceeding before a foreign tribunal.*  The *Kayat Trading Limited v. Genzyme Corporation* proceeding in the District Court of Nicosia, Cyprus, is pending and is an

---

[2] 542 U.S. 241, 124 S. Ct. 2466, 159 L. Ed. 2d 355 (2004).
[3] 542 U.S. at ___, 124 S. Ct. at 2476, 159 L. Ed. 2d at 370, rejecting *In re Asta Pharmaceutical S.A.*, 981 F.2d 1, 6 (1st Cir. 1992).

3

adjudicative proceeding.[4]

(3)   *The application is made by an interested person.*  Petitioner Kayat, being the plaintiff in the Cypriot Action, clearly is an interested person.[5]

This Court is squarely authorized under 28 U.S.C. § 1782(a) to order the discovery requested by petitioner Kayat.

## II.   The "Twin Aims" of 28 U.S.C. § 1782 Are Met by Granting Discovery.

Under section 1782, "[o]nce the statutory requirements are met, the district court is free to grant discovery in its discretion." *In re Schmitz*, 376 F.3d 79, 83-84 (2d Cir. 2004), *quoting In re Metallgesellschaft*, 121 F.3d 77, 78 (2d Cir. 1997). The Second Circuit has instructed its district courts to "exercise their discretion under § 1782 in light of the *twin aims* of the statute: '[1] providing *efficient* means of assistance to participants in international litigation in our federal courts and [2] encouraging foreign countries by example to provide similar means of assistance to our courts . . . .'"[6]

These "twin aims" were drawn from the letter of the Congressional Commission on International Rules of Judicial Procedure to the Senate Judiciary Committee considering

---

[4] The case law is clear that such an action qualifies as a "proceeding" under the statute. *See In re Ishihara Chemical Co.*, 251 F.3d 120, 124-25 (2d Cir. N.Y. 2001) (there are two issues: whether the foreign proceeding is adjudicative in nature and whether there actually is a foreign proceeding); *Lancaster Factoring Co.*, 90 F.3d 38 (2d Cir. 1996) ("The principal requirement imposed by section 1782 is that the requested discovery be for use in 'a proceeding.' We have interpreted this to mean a proceeding in which an adjudicative function is being exercised.").

[5] The legislative history of section 1782 specifically states that "a request for judicial assistance under [section 1782] may . . . be . . . made in a direct application by *a party* to the foreign or international litigation." S. Rep. No. 1580, 88th Cong., 2d Sess., *reprinted in* 1964 U.S. Code Cong. & Admin. News 3782, 3789 (emphasis added). *See, e.g., In re Metallgesellschaft*, 121 F.3d 77, 78-79 (2d Cir. 1997) (undisputed that parties to a German civil proceeding are interested persons for purposes of section 1782).

[6] *Schmitz*, 376 F.3d at 84, *quoting Metallgesellschaft*, 121 F.3d at 79, *quoting In re Malev Hungarian Airlines*, 964 F.2d 97, 100 (2d Cir. 1992) (emphasis added). *See, e.g., In re Servicio Pan Americano de Proteccion, C.A.*, 2004 U.S. Dist. LEXIS 24430 (S.D.N.Y. 2004) (expressly considering the "twin airms"); *In re Letter Rogatory from the Nedenes District Court, Norway*, 216 F.R.D. 277, 279, 280 (S,D.N.Y. 2003) (same); *In re Schmitz*, 259 F. Supp. 2d 294, 297 (.S.D,N,Y. 2003) (same), *aff'd*, 376 F.3d 79.

4

section 1782:

> Enactment of the proposed bill into law will constitute a major step in bringing the United States to the forefront of nations adjusting their procedures to those of sister nations and thereby [1] providing *equitable and efficacious procedures* for the benefit of tribunals and litigants involved in litigation with international aspects.
>
> The Commission hopes that the initiative taken by the United States in improving its procedures will *invite foreign countries* similarly *to adjust their procedures.* . . . Enactment of the proposed bill should [2] *encourage foreign nations to follow the example of the United States.*

*In re Malev Hungarian Airlines*, 964 F.2d 97 (2d Cir.), *cert. denied*, 506 U.S. 861 (1992),

*quoting* S. Rep. No. 1580, 88th Cong., 2d Sess. (1964), *reprinted in* 1964 U.S. Code Cong. &

Admin News 3782, 3793-94 (emphasis added). The Judiciary Committee concurred:

> Until recently, the United States has not engaged itself fully in efforts to improve practices of international cooperation in litigation. The steadily growing involvement of the United States in international intercourse and the resulting increase in litigation with international aspects have demonstrated the necessity for statutory improvements and other devices to facilitate the conduct of such litigation. Enactment of the bill into law will constitute a major step in bringing the United States to the forefront of nations adjusting their procedures to those of sister nations and thereby providing [1] *equitable and efficacious procedures* for the benefit of tribunals and litigants involved in litigation with international aspects.
>
> It is hoped that the initiative taken by the United States in improving its procedures will [2] *invite foreign countries* similarly *to adjust their procedures.*

*Malev*, 964 F.2d at 99-100, *quoting* S. Rep. No. 1580, 88th Cong., 2d Sess. (1964), *reprinted in* 1964 U.S. Code Cong. & Admin. News at 3783 (emphasis added). The *Malev* court found that it was an abuse of the district court's discretion to deny a section 1782 discovery request in a situation such as this one in which a party in a foreign litigation sought discovery in the American district where the other party resided and presumably kept its documents.[7]

---

[7] Applying the twin aims, the Second Circuit generally has required its district courts to exercise discretion in favor of granting § 1782(a) applications. *See, e.g., In re Edelman*, 295 F.3d 171 (2d Cir. 2002) (vacating district court's order quashing subpoena issued pursuant to § 1782(a)); *Metallgessellschaft* 121 F.3d 77 (reversing district court's denial of 1782(a) application). *Cf. Schmitz*, 376 F.3d at 84 (affirming district court's denial of § 1782(a)

Here, the twin aims of section 1782 clearly call for granting the application:

(1) Production of Genzyme documents and witnesses required for determining the issues of Genzyme's plans for its melatonin line as it was encouraging Kayat to market the line (*see* Ladas Aff. Ex. AGL4B) is most efficiently accomplished through the straightforward section 1782 procedure applied in Genzyme's headquarter State, as moderated by the Federal Rules of Civil Procedure. The alternative procedure in the District Court of Nicosia is cumbersome and unlikely to be effective. Ladas Aff. ¶¶ 8-15.

(2) Use of the Federal Rules of Civil Procedure would set an example for the Cypriot court, which is expected to welcome the help. Ladas Aff. ¶¶ 16.

### III. The *Intel* Considerations Weigh in Favor of Granting Discovery.

The *Intel* Court identified several factors that "bear consideration" by a district court in ruling on a section1782(a) request: [1] whether the person from whom discovery is sought is a participant in the foreign proceeding, [2] the nature of the foreign tribunal, [3] the character of the proceedings underway abroad, [4] the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance, [5] whether the request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States, and [6] whether the discovery sought is "unduly intrusive or burdensome."

---

application by plaintiffs to a civil action in Germany in light of opposition to the request by the German Ministry of Justice and Prosecutor: "[f]aced with these submissions, the district court found that granting petitioners' request would not promote the twin aims of 1782."). The Third Circuit has also embraced this approach. *E.g., In re Bayer AG*, 146 F.3d 188, 191 (3d Cir. 1998); *see John Deere Ltd. v. Sperry Corp.*, 754 F.2d 132, 135 (3d Cir. 1985) (section 1782 an ". . . example of *unilateral, nonreciprocal, internal legislation,* . . . which other countries may wish to follow," *quoting* Amram, "Public Law No. 88-619 of October 3, 1964 -- New Developments in International Judicial Assistance in the United States of America," 32 D.C. Bar J. 24, 33 (1965) (emphasis added by court)).

124 S. Ct. at 2483, 159 L. Ed. 2d at 377-78.[8] The *Intel* factors do not provide "any persuasive reason [for the Court] not to exercise its discretion in favor of allowing discovery to [the petitioner]."[9] In fact, here, they militate strongly in favor of granting the discovery.

> (1) *It is unlikely that Kayat can obtain the discovery through the Cypriot court.* In suggesting that "the need for § 1782(a) generally is not as apparent" when the person from whom discovery is sought is a participant in the foreign proceeding, the *Intel* Court was concerned for non-participants, "[whose] evidence, available in the United States, may be unobtainable absent *§ 1782(a)* aid." *Intel*, 124 S. Ct. at 2483, 159 L. Ed. 2d at 377. Here, the Cypriot court cannot order Genzyme to produce witnesses or compel the production of documents (Ladas Aff. ¶¶ 13, 15), so that the aim of section 1782 to provide an efficient or "efficacious" procedure is met by granting the application.[10]
>
> (2) *The foreign tribunal is a trial court operating on common law principles and follows English and (to a lesser degree) Commonwealth precedent.* Ladas Aff. ¶ 7. Discovery under the Federal Rules of Civil Procedure, designed for American civil actions, is clearly appropriate.[11]
>
> (3) *The foreign proceeding is one of civil damages, in this case, applying*

---

[8] The court in *In re Procter & Gamble Co.* 334 F.Supp.2d 1112, 1114-17 (E.D. Wisc. 2004), read the Intel "factors" as [1] participation in the foreign proceeding, [2] circumvention of the policies of the foreign government, [3] undue burden, [4] confidentiality, and [5] "parity" or reciprocity in discovery. Here, confidentiality may be arranged by agreement, and although discovery of Kayat can be had in Cyprus, it is amenable to reciprocal discovery (Ladas Aff. ¶ 17).

[9] *In re Phillips*, 2004 U.S. Dist. LEXIS 16426, at *7 (S.D.N.Y. 2004) (indicating presumption in favor of granting discovery).

[10] Despite the fact that the parties before the *Procter & Gamble* court were participants in the foreign proceeding, the court found that the proposed alternative to section 1782 discovery was "inefficient and possibly ineffective." *Id.* at 1115. Similarly, the post-*Intel Servicio Pan Americano* case granted section 1782 discovery to a participant in the foreign proceeding. Here, the section 1782 procedure is clearly more efficient than attempts to obtain discovery here through the limited Cypriot procedures.

[11] The *Phillips* court took notice that the English court "hears the testimony of witnesses and receives documents in evidence, very much as American courts do." 2004 U.S. Dist. LEXIS 16426, at *5-*6.

7

*Massachusetts substantive law.* The requested discovery – of Genzyme's plans and results for and communications about its melatonin product line during 1995-2003 and communications of witnesses who interacted with Kayat during that time period – is designed to adduce relevant evidence that likely will be admissible in the Cypriot Action.[12] *See* Ladas Aff. ¶ 16, Ex. AGL4B at 1-3, 5-11, 14-15, 19-20, 23-24.

(4) *The foreign tribunal is expected to be receptive to evidence that can be discovered in this case.* Ladas Aff. ¶ 16; see *Phillips* 2004 U.S. Dist. LEXIS 16426, at *6-*7.

(5) *There is no proof-gathering restriction or policy of Cyprus, so that the instant application cannot seek to circumvent such a restriction or policy.* Unlike the circumstances in *Intel*[13] and *Schmitz,* where the German government actively opposed American discovery, the District Court of Nicosia is expected to welcome the fruits of discovery here. Ladas Aff. ¶ 16.

(6) *The discovery is not "unduly intrusive or burdensome."* It is specifically directed at uncovering the internal plans of Genzyme with respect specifically to its melatonin product line and its communications to and about Kayat. Had the case been brought in this district, there likely would have been more preliminary discovery. The proposed order directs that any discovery disputes be resolved by a United States Magistrate under the Federal Rules of Civil

---

[12] Similarly to the circumstance in Phillips, "the nature of the English Action suggests that discovery is appropriate to obtain relevant testimony and documents . . . the discovery sought facially appears potentially relevant to the English Action." 2004 U.S. Dist. LEXIS 16426, at *6.

[13] The *Intel* Court noted: "[The] House of Lords ruled that nondiscoverability under English law did not stand in the way of a litigant in English proceedings seeking assistance in the United States under § 1782." 542 U.S. at ___, 124 S. Ct. at 2481, 159 L. Ed. 2d at 376, *quoted at Phillips,* 2004 U.S. Dist. LEXIS 16426, at *6-*7.

Procedure which allows the entry of protective orders to prevent unduly intrusive or burdensome discovery. This plus the offer to provide reciprocal discovery (which could be had in Cyprus), assures that the requested order provides for "equitable" discovery.

Even if the Cypriot court could compel Genzyme to produce documents or witnesses, there is no "exhaustion" requirement:

> [R]equiring an interested person first to seek discovery from the foreign or international tribunal is at odds with the twin purposes of [section 1782] . . . .It would undermine the policy of improving procedures for assistance to foreign and international tribunals by imposing an additional burden on persons seeking assistance from our federal courts for matters relating to international litigation. Additionally, it would undermine the policy of prompting foreign courts to act similarly based on our own generous example.

*Malev*, 964 F.2d at 100.

## Conclusion

Kayat meets all of the statutory requirements to obtain discovery pursuant to 28 U.S.C. § 1782(a) and, in light of the "twin aims" of § 1782(a) and upon consideration of the factors identified by the Supreme Court in *Intel*, the Court should exercise its discretion to provide the discovery requested in the proposed order.

Dated: April 6, 2005

Respectfully submitted,
KAYAT TRADING LIMITED
By Its Attorneys

Stephen Y. Chow, BBO#082990
Michael P. Twohig, BBO#648079
PERKINS SMITH & COHEN LLP
One Beacon Street
Boston, Massachusetts 02108
(617) 854-4000