UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

In re the Application of Kayat Trading Limited,
                Petitioner,

For an Order to Take Discovery of Genzyme Corporation,
                Respondent

Pursuant to 28 U.S.C. § 1782

C.A. No. 05-MBD-10147-GAO

**OPPOSITION TO PETITION FOR DISCOVERY UNDER 28 U.S.C. § 1782**

    Genzyme Corporation ("Genzyme") opposes the petition for discovery by Kayat Trading Limited ("Kayat") under 28 U.S.C. § 1782 in connection with an action pending in Nicosia, Cyprus (the "Cyprus Action"). Kayat's petition should be denied because it is premature. Genzyme has challenged the jurisdiction of the Cyprus court in an appeal that is currently pending before the Supreme Court of Cyprus. If Genzyme prevails in its jurisdictional challenge, there will be no foreign proceeding in which the discovery Kayat seeks could be used. Action on Kayat's petition in this Court should be stayed until Genzyme's jurisdictional challenge has been resolved by the courts in Cyprus. If it is ultimately determined that the Cyprus court has jurisdiction, any discovery order under § 1782 should be stayed until the pleadings have been completed in Cyprus and narrowly drawn to ensure that it does not give Kayat an unfair advantage in the Cyprus Action.

126699.4

**Background.**[*]

Kayat, a Cyprus company, commenced the underlying action in the District Court in Nicosia, Cyprus in July 2002 against Genzyme, a Massachusetts corporation (Ladas Aff., ¶ 3). Kayat alleges that Genzyme breached a contract for the supply of melatonin to be distributed by Kayat in the Ukraine (Ladas Aff., ¶ 4.1). Genzyme appeared under protest and in December 2002 filed an application challenging the jurisdiction of the Cyprus court and asserting that it is a *forum non conveniens* (Ladas Aff., ¶ 5.1). The trial court in Cyprus rejected Genzyme's application in an interim ruling in March 2004 (Ladas Aff., ¶ 5.2). Genzyme appealed that ruling, and its appeal is now before the Supreme Court of Cyprus (Polyviou Aff., ¶ 7). The Supreme Court heard oral argument in April 2005 on the question of whether the March 2004 interim ruling is appealable. If the Supreme Court rules that the March 2004 interim ruling is appealable, it will then consider the merits of Genzyme's appeal challenging the jurisdiction and competence of the Cyprus trial court. If the Supreme Court were to rule that the District Court in Nicosia is a *forum non conveniens*, as Genzyme claims, the Cyprus Action that is the predicate of Kayat's present § 1782 petition would be permanently stayed or dismissed (Polyviou Aff., ¶ 8).

Although the pendency of Genzyme's jurisdictional challenge did not operate as an automatic stay of the Cyprus proceeding, the pleadings in the Cyprus Action have never been completed. Kayat did not file its "Statement of Claim" in the Cyprus Action – the equivalent of a complaint in our courts – until November 2004 (Ladas Aff., ¶ 6.1 & Ex. AGL4B). Genzyme

---

[*] Both Kayat (through Andreas A. Ladas) and Genzyme (through P.G. Polyviou) have submitted affidavits from their Cyprus counsel describing the Cyprus Action. (The Polyviou Affidavit is attached.) While they have divergent opinions about the timing and scope of Kayat's present § 1782 petition, the Cyprus lawyers do not appear to disagree about the procedural posture of the Cyprus Action or the usual course of discovery in civil actions pending in the Cyprus courts.

has not yet filed its "Statement of Defence" – the equivalent of an answer – because the issue of *forum non conveniens* remains on appeal before the Supreme Court of Cyprus, and the District Court of Nicosia has not yet ruled on Genzyme's application to strike portions of Kayat's Statement of Claim (Polyviou Aff., ¶ 4).

Since the pleadings have not yet been completed, under applicable rules and customary practice in Cyprus, discovery has not yet begun (Ladas Aff., ¶ 8; Polyviou Aff., ¶ 6). As Kayat's own counsel advises, "[t]he usual time for ordering discovery is at the summons for directions stage, which occurs immediately after the close of pleadings" (Ladas Aff., ¶ 8). Kayat has not sought expedited discovery from the Cyprus court (Polyviou Aff., ¶ 6). Kayat's petition before *this* Court, however, seeks immediate production of a vast array of Genzyme's documents, to be followed promptly by depositions of Genzyme witnesses.[*] Genzyme opposes Kayat's petition.

**Argument.**

I.  **THE COURT SHOULD EXERCISE ITS DISCRETION TO DENY OR CONDITION ANY ORDER FOR DISCOVERY UNDER § 1782**.

Even if the Cyprus Action is a foreign proceeding within the scope of § 1782, the Court is not required to grant Kayat's application for discovery. *Intel Corp.* v. *Advanced Micro Devices, Inc.*, 542 U.S. 241, ___, 124 S. Ct. 2466, 2473, 2481 (2004). Section 1782 "'authorizes, but does not require' district courts to provide assistance to interested persons in proceedings abroad." *Procter & Gamble Co.* v. *Kimberly-Clark Corp.*, 334 F. Supp. 2d 1112, 1113 (E.D. Wis. 2004)

---

[*] Kayat proposes that any disputes relating to the discovery it seeks be determined by a Magistrate Judge (Petition at 8-9). If Kayat's petition is granted, Genzyme reserves its right to object to the scope of the particular discovery sought by Kayat and to bring its objections before the Court for resolution. Genzyme notes, for example, that the scope of the documents requested by Kayat, and hence the scope of Kayat's proposed depositions, goes well beyond any discovery that could be justified by the Cyprus Action, whether measured by geography (Kayat seeks information about all of Genzyme's markets worldwide), time (Kayat seeks information for a nine-year period) or subject matter (Kayat seeks information pertaining to "any aspect of Genzyme's melatonin business").

(quoting *Intel*, 124 S. Ct. at 2473). The statute "'leaves the issuance of an appropriate order to the discretion of the court which, in proper cases, may refuse to issue an order or may impose conditions it deems desirable.'" *Intel,* 124 S. Ct. at 2481 (quoting S. Rep. No. 1580, at 7, 1964 U.S.C.C.A.N. 3782, 3788). In this case, there are good reasons to deny or condition the discovery sought by Kayat.

**II.   DISCOVERY IS PREMATURE BECAUSE THE CYPRUS ACTION MAY BE DISMISSED AND THE PLEADINGS HAVE NOT YET BEEN CLOSED.**

There are two separate reasons why any discovery order under § 1782 would be premature: (a) the Cyprus Action may be dismissed on jurisdictional grounds, and (b) even if the Cyprus Action is allowed to proceed, discovery should await the completion of pleadings. For these reasons, the Court should either deny Kayat's petition or stay action upon it until Genzyme's claim of *forum non conveniens* has been resolved by the Supreme Court of Cyprus and, if the Cyprus Action is allowed to proceed, the pleadings there have been completed.

**A.   There May Soon Be No "Proceeding" In Cyprus.**

Since the inception of the Cyprus Action, Genzyme has protested that the District Court in Nicosia is a *forum non conveniens* and that the case should be dismissed. Although Genzyme's jurisdictional challenge was rejected by the trial court, Genzyme's appeal is presently under consideration by the Supreme Court of Cyprus (*see* Ladas Aff., ¶ 5.2; Polyviou Aff., ¶¶ 7-8). As Genzyme's Cyprus counsel has explained: "the matter of *forum non conveniens* is very much a live issue in the Cyprus Action." The Supreme Court of Cyprus currently has the matter under advisement. Just last month the Court heard argument on whether the District Court's interim ruling denying Genzyme's challenge is appealable. If the Court rules in Genzyme's favor, it will then hear argument on whether Kayat may continue to maintain its

- 4 -

126699.4

action in Cyprus. If the Supreme Court rules for Genzyme on the merits, the Cyprus Action will be permanently stayed or dismissed (Polyviou Aff., ¶ 8).

If the Cyprus Action is permanently stayed or dismissed, there will no longer be any foreign proceeding that would be served by the discovery presently sought by Kayat. It follows in these circumstances that the Court should deny or decline to act on Kayat's petition under § 1782 until the Supreme Court of Cyprus has resolved the pending appeal. This Court has previously stayed discovery while a foreign defendant in a lawsuit pending in this District has pursued a motion to dismiss on the basis of *forum non conveniens*. *See*, *e.g.*, *LTX Corp.* v. *Daewoo Corp.*, 979 F. Supp. 51, 54, 59 (D. Mass. 1997). It should also stay discovery when a similar motion to dismiss by a Massachusetts defendant is under consideration in a foreign proceeding and discovery on the merits is sought in this District under § 1782.

    **B.  The Court Should Not Permit Kayat To Jump The Gun On Discovery.**

Even if Genzyme's jurisdictional challenge were not pending before the courts in Cyprus, Kayat's petition for discovery would be premature. As both of the foreign lawyers have explained in their affidavits, it would be unusual and inappropriate under customary practice and procedure in Cyprus for Kayat to commence discovery at this time. Discovery is not automatic in Cyprus and is available only upon a court order (Ladas Aff., ¶ 8). Absent circumstances justifying expedited discovery – and none have been shown in this case – Cyprus courts will only order discovery at the "summons for directions" stage, which takes place after the pleadings have been closed (Ladas Aff., ¶ 8; Polyviou Aff. ¶ 6). Kayat has not offered any justification for obtaining discovery in this country before discovery could begin in Cyprus. This Court should not permit Kayat to begin discovery here until the pleadings have been completed in Cyprus.

### III. KAYAT HAS NOT SHOWN THAT RECIPROCAL DISCOVERY WILL BE POSSIBLE.

The United States Supreme Court has recognized that when considering petitions for discovery under § 1782, principles of comity and parity provide "important touchstones for a district court's exercise of discretion in particular cases." *Intel*, 124 S. Ct. at 2481. The Supreme Court has suggested that a district court can condition relief upon the "reciprocal exchange of information" to address inevitable concerns about "… maintaining parity among adversaries in litigation… ." *Id.* at 2482.

Anticipating this possibility, Kayat states that it is "ready to agree to make reciprocal discovery" (Ladas Aff., ¶ 17). Kayat blithely asserts that its offer to provide reciprocal discovery, which it claims "could be had in Cyprus," assures that there will be "equitable" discovery if its present petition is allowed (Petition at 9). Kayat's promise to provide reciprocal discovery may be illusory, however, for two distinct reasons: (a) depositions, as the term is used in our system, are not available in Cyprus; and (b) key witnesses for Kayat are likely to be found in the Ukraine, not in Cyprus.

Kayat acknowledges that discovery in Cyprus is "cumbersome" and may be ineffective (Petition at 6). While the production of relevant documents by opposing parties in pretrial discovery is apparently commonplace, the rules of discovery in Cyprus do not contemplate the taking of testimony by oral deposition (Polyviou Aff., ¶¶ 10-11). As a result, it may not be possible for Genzyme to obtain any deposition discovery in Cyprus (Polyviou Aff., ¶¶ 12, 15).

More importantly, Kayat acknowledges that the Cyprus court cannot order a foreigner "to produce witnesses or compel the production of documents" (Petition at 7). There is little for Genzyme to discover in Cyprus (which is one of the reasons why it is not a *forum conveniens*). While Genzyme may seek some discovery in Cyprus, many essential facts may only be

126699.4

obtainable from entities and witnesses in the Ukraine. As Kayat's Statement of Claim makes plain, Kayat's damage claims are based upon alleged facts and circumstances in the Ukraine, not in Cyprus (*see* Ladas Aff., Ex. AGL4B). Kayat alleges, for example, that in reliance on its contract with Genzyme, it arranged with the Ukrainian Scientific Therapeutical Society to survey the market and contracted with a Ukrainian company called "000 ANIT" ("ANIT") to be Kayat's exclusive subdistributor in the Ukraine; that Kayat and ANIT engaged in extensive promotional activities in the Ukraine; that as a result of these activities Kayat suffered reliance damages of $576,256; that ANIT, in turn, made agreements to sell Genzyme's melatonin to two Ukrainian pharmaceutical companies, "JV CERTA" and "JV 'Medical Commerce'"; and that as a result of Genzyme's alleged failure to deliver conforming goods, the Ukrainian regulatory authorities forbid the sale of its product, ANIT made a claim against Kayat, and both CERTA and Medical Commerce have made claims against ANIT (Statement of Claim, ¶¶ 8, 12-16, 20; *see also* Ladas Aff., Ex. AGL1C, Meshkov Aff., ¶¶ 9-10).

For Genzyme to obtain reciprocal discovery, it would be essential for Genzyme to pursue evidence of these alleged facts and circumstances relating to Kayat's joint ventures in the Ukraine. Kayat has not offered any suggestions about how it would make documents or witnesses from the Ukrainian Scientific Therapeutical Society, ANIT, CERTA or Medical Commerce – to say nothing of the Ukrainian regulatory authorities – available to Genzyme. Genzyme knows of no way that Kayat can provide reasonable assurances that Genzyme will be able to obtain such discovery (*see* Polyviou Aff., ¶¶ 16-17). It would, as a result, violate basic principles of parity and be distinctly unfair to grant Kayat's petition.

126699.4

**Conclusion.**

For all of these reasons, this Court should deny Kayat's petition for discovery. If the Court is inclined to grant Kayat's petition, however, it should impose the following conditions:

a.  discovery should be stayed until the issue of *forum non conveniens* has been resolved and the pleadings have been completed in Cyprus;

b.  if the Cyprus Action is dismissed on the basis of *forum non conveniens*, no discovery should be required;

c.  while discovery is stayed, the parties should attempt to negotiate a mutually-acceptable plan for reciprocal discovery;

d.  if the parties are unable to develop a satisfactory reciprocal discovery plan, and the stay of discovery expires, the Court should consider at that time what further conditions to impose upon whatever discovery, if any, it orders; and

e.  when discovery begins, Genzyme may assert whatever objections it may have to particular items of discovery in accordance with applicable Federal Rules.

By its attorneys,

/s/ Scott P. Lewis
_____
Scott P. Lewis (BBO #298740)
PALMER & DODGE LLP
111 Huntington Avenue
Boston, MA 02199
(617) 239-0100

May 16, 2005

126699.4

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| In re Application of<br><br>Kayat Trading Limited,<br><br>Petitioner,<br><br>for an Order to Take Discovery of<br><br>Genzyme Corporation,<br><br>Respondent,<br><br>Pursuant to 28 U.S.C. § 1782 | C.A. No. 05-MBD-10147-GAO |

**AFFIDAVIT OF P.G. POLYVIOU**

I, P.G. Polyviou of Nicosia, Cyprus, make oath and say as follows under the pains and penalties of perjury:

1. I am an advocate licensed to practice before all Courts of the Republic of Cyprus, and I have actively practiced law in Nicosia since 1981. I was educated at Oxford University, where I obtained the degrees of Bachelor of Arts (with Honours) in Jurisprudence and Bachelor of Civil Law. I am a Barrister-at-Law, of Gray's Inn, London. I was also a Jane Eliza Procter Research Fellow at Princeton University in 1972 – 1973.

121612.2

125049.1



2.  I represent Genzyme Corporation ("Genzyme") in the District Court of Nicosia in the action brought against Genzyme by Kayat Trading Limited ("Kayat"), Action No. 7462/02 (the "Cyprus Action").

3.  I have reviewed the affidavit submitted to this Court by Andreas G. Ladas, Kayat's lawyer in Nicosia, in connection with Kayat's petition for a discovery order under 28 U.S.C. § 1782(a).

4.  As Mr. Ladas recites in his affidavit, the Cyprus Action has been pending since July 2002. Kayat did not serve its Statement of Claim in the Cyprus Action until November 2004. Genzyme has yet to file its Statement of Defence, both because of the pendency of the matter of *forum non conveniens* before the Supreme Court of Cyprus (see below) and also because Genzyme has filed an application, which is still pending before the District Court of Nicosia, for the striking out of parts of Kayat's Statement of Claim. The pleadings in the Cyprus Action have, consequently, not yet been completed.

**Timing of Discovery**

5.  At this stage of the Cyprus Action, discovery of any kind is premature, for two reasons.

121612.2

125049.1



6.      First, as Mr. Ladas acknowledges in his affidavit (¶ 8), the usual time for ordering discovery in civil actions in the Cyprus courts is at what we call the "summons for directions stage," which occurs only *after* the close of pleadings. Since the pleadings have not yet been closed, it would be inappropriate and unusual under Cyprus practice for discovery to occur at this stage. In any event, Kayat has not applied to the Cyprus Court for any form of expedited or other discovery.

7.      Second, as Mr. Ladas also acknowledges in his affidavit (¶ 5), in December 2002, Genzyme filed an application to set aside the order of the District Court in Nicosia that authorized Kayat to serve a summons upon Genzyme, on the grounds that the Cyprus Court has no jurisdiction to hear the case and is a *forum non conveniens*. The District Court denied our application in March 2004 in an interim ruling that is now the subject of an appeal pending before the Supreme Court of Cyprus.

8.      In April 2005, the Supreme Court heard argument on the question of whether the District Court's interim ruling of March 2004 is an appealable order. If the Supreme Court rules that the March 2004 interim ruling is an appealable order, the Supreme Court will then hear, on its merits, our appeal challenging the jurisdiction and competence of the District Court of Nicosia. If the Supreme Court were to rule that the District Court in Nicosia is a *forum non conveniens*,

121612.2

125049.1



the Cyprus Action would be permanently stayed or dismissed. As these circumstances make apparent, the matter of *forum conveniens* is very much a live issue in the Cyprus Action.

9. Until pleadings are complete, and until the question of whether Kayat will be permitted to maintain its action against Genzyme in the Courts of Cyprus is resolved, it would be premature for this Court to order discovery in aid of the Cyprus Action.

### Scope of Discovery

10. Even if discovery were timely, under applicable rules and practice in Cyprus discovery would not be as extensive as what is sought by Kayat in its petition for a discovery order before the United States District Court for the District of Massachusetts. In Cyprus, in my experience as an advocate and in accordance with usual practice and procedure in respect of a proceeding such as the Cyprus Action, discovery invariably provides for the production of relevant documents subject to and in accordance with the rules set forth in Order 28, attached to the Ladas Affidavit as Exhibit AGL5.

11. The rules of discovery in Cyprus, howsoever construed and as usually applied, do not contemplate the taking of testimony by oral deposition, as this practice has been explained to me by Genzyme's American Counsel.

121612.2

125049.1



12. If this Court were to order Genzyme to produce witnesses for deposition, it would provide an unfair advantage to Kayat, since Genzyme, in my experience as an advocate in Cyprus and on the information before me, would have no comparable opportunity in the Cyprus Action to obtain deposition testimony from Kayat's witnesses in Cyprus or anywhere else.

**Reciprocal Discovery**

13. In his affidavit (¶ 17), Mr. Ladas reports that he has been instructed by Kayat to state that Kayat "is ready to agree to make reciprocal discovery."

14. There are two reasons to doubt Kayat's capability to make fully reciprocal discovery.

15. First, as explained above, Cyprus practice and procedure do not contemplate the taking of testimony by oral deposition (as this is sought by means of the present petition for discovery) in a proceeding such as the Cyprus Action. Therefore, it would not, in my view, be possible for Genzyme to obtain oral testimony by deposition of Kayat witnesses who are in Cyprus.

16. Second, and perhaps more importantly, many of the key witnesses in this matter may not be found in Cyprus. (This, of course, is one of the reasons why the Court in Nicosia is not, in my view, the *forum conveniens* for the claims of Kayat against Genzyme – but, of course, this is the

121612.2

125049.1



issue pending at present before the Supreme Court of Cyprus.)  Kayat's claims in the Cyprus Action deal with the sale and distribution of a certain product, melatonin, in the Ukraine and in Russia, as alleged in Kayat's Statement of Claim attached to the Ladas Affidavit as Exhibit AGL4B.  Kayat's alleged damages were realized, if at all, in these former republics of the Soviet Union, and not in Cyprus.

17.     For Genzyme to obtain reciprocal discovery, it would be essential, as a result, for Kayat to provide an effective opportunity for Genzyme to obtain documents from the Ukraine and possibly Russia and to take depositions upon oral examination of witnesses for Kayat or its allegedly independent sub-distributors who are likely to be found only in the Ukraine.  I know of no way in which Kayat can reasonably assure Genzyme that it will be able to make such discovery available.  In any event, no such way or method or procedure has been suggested by Kayat.

18.     To sum up, in my view and on the basis of my experience as an advocate in Cyprus, any discovery that is provided by Kayat in the context of the Cyprus Action, whether pursuant to a judicial order or otherwise, will in no way be comparable to the discovery sought by means of the current petition before the United States District Court.

121612.2

125049.1

19.   For all of these reasons, it is my view that Kayat's petition for discovery in aid of the Cyprus Action is (a) premature; (b) unreasonably broad; and (c) distinctly unfair.

The Affiant

**P.G. Polyviou**

Sworn and signed before me in the District Court of Nicosia this [ 3   day of May 2005.

REGISTRAR



121612.2

125049.1