UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

In re Application of

Kayat Trading Limited,

Petitioner,

for an Order to Take Discovery of

Genzyme Corporation,

Respondent,

Pursuant to 28 U.S.C. § 1782

C.A. No. 05-MBD-10147-GAO

# AFFIDAVIT OF ANDREAS G. LADAS

I, the undersigned, Andreas G. Ladas of Nicosia, Cyprus, make oath and say as follows:

1. I am an advocate licensed to practise before all Courts of the Republic of Cyprus. I have been in actual practice in Nicosia since 1974. I am the advocate handling the case in Cyprus for the Plaintiffs ("Kayat") and have previously sworn an affidavit in support of Kayat's Petition for Discovery which was filed herein on 7 April 2005.

2. I have taken the opportunity to review the affidavit submitted to this Court by Mr. P.G. Polyviou, Genzyme Corporation's Cypriot lawyer, on 16 May 2005 ("Mr. Polyviou's affidavit").

3. At paragraph 4, et seq. of Mr. Polyviou's affidavit, reference is made to proceedings now pending before the Supreme Court of Cyprus wherein Genzyme seeks to appeal the 31 March 2004 Interim ruling of the District Court of Nicosia dismissing Genzyme's application that the Cyprus Court lacked jurisdiction over the case and was a forum non conveniens ("the Interim Ruling").

4. I have translated the Interim Ruling into English. I attach herewith

(a) as Exhibit AGL6A copy of the Interim Ruling, and

(b) as Exhibit AGL6B an English translation thereof.

1

5.   The issue currently before the Cyprus Supreme Court, which was raised by Kayat as a preliminary point, is whether, as a matter of law, an appeal is even available from the Interim Ruling. As Mr. Polyviou implicitly acknowledges, the pending appeal does not act to stay proceedings in the District Court (i.e., the trial court). Indeed, subsequent to the appeal, Genzyme has filed application in the District Court to strike out portions of Kayat's Statement of Claim [Polyviou ¶ 4].

6.   In my opinion the reasoning expressed by the District Court in the Interim Ruling is sound and based on settled principles of law. For example, after noting that paragraph 15 of the Genzyme – Kayat agreement provides that "...*the parties agree to submit to the jurisdiction of the Courts of Massachusetts, U.S.A. but the parties may enforce this Agreement in any court of competent jurisdiction*", the Court stated "it can be safely concluded that an exclusive jurisdiction clause is not incorporated, but concurrent jurisdiction is laid down." (AGL6B, p.5; p.9). On the issue of forum non conveniens the District Court observed that "the particulars put by each side... reveals the necessity of production of evidence, oral or real from the Ukraine, Cyprus, the USA and England." (AGL6B, p.10). After carefully balancing a number of factors including the relative costs, the burdens on witnesses and the fact that the plaintiff is a Cypriot company, the Court concluded that Genzyme has "failed to satisfy me that Cyprus is not the appropriate forum and that Massachusetts is the most appropriate one." (AGL6B, p.11).

7.   I believe it is also important to recognize that even if the Supreme Court should eventually decide that the Interim Ruling is appealable and proceed to hear the appeal on its merits, no automatic stay of the trial court proceedings will result.

8.   .Regarding paragraph 4 of Mr.Polyviou's affidavit, I also wish to note  the following:

(a) the delay in filing the Statement of Claim was due to the fact that Genzyme had entered a conditional appearance and had applied to strike the action for lack of jurisdiction or forum non conveniens. In these circumstances the action could not proceed to the filing of pleadings until the application was disposed of by the District Court (i.e., 31 March 2004);

(b) the pendency of the matter of forum non conveniens on appeal is not a reason for not filing the Statement of Defence;

(c) the application to strike out parts of the Statement of Claim prays for the striking out of paragraphs 7.1 to 7.9, 23.1 to 23.5, 27.1 to 27.3, 28.1 to 28. 2 and 31.1 to 31.7 of the Statement of Claim, in which certain clauses of the subject-matter Contract and the relevant sections of the U.S. Code and the Laws of Massachusetts are set out verbatim, on the ground that they constitute evidence and not material facts, and that their setting out verbatim may "create prejudice and unfavourable impressions" for the defendants. With respect, I consider the application to be without merit and to aim at providing an excuse to further delay the filing of the Statement of.

2

Defence, which appears to be Genzyme's current strategy in the Cypriot proceedings. Kayat opposes the application, relying on specific and clear provisions in the textbooks (Bullen & Leake on Pleadings and Dicey & Morris on The Conflict of Laws) that clauses in contracts, and sections of foreign statutes, on which a party intends to rely should be pleaded verbatim.

9.  As regards Kayat's offer to agree to making reciprocal discovery, the emphasis is on the word "agree". It is correct that Cypriot procedural rules do not provide for the compulsory taking of witness depositions. There is nothing, however, to prevent a party from voluntarily agreeing to make its witnesses available for such purpose and to the use of the depositions as evidence in the trial. This is what Kayat is ready to agree to, as regards its witnesses in Cyprus. As regards witnesses from the Ukraine or the U.K., as the Court in the Interim Ruling points out, it is as difficult (I would say considerably more difficult) for them to travel from their countries to Massachusetts than it is to travel to Cyprus. Kayat is also ready to discover all the documents in its possession or power, including the voluminous correspondence with Genzyme's U.K. facility. Indeed, Kayat has already unilaterally disclosed to Genzyme a significant number of important documents, when it submitted the outline of its claims in February, 2001, in the failed attempt to reach a settlement.

THE AFFIANT

*Andreas G. Lades*

Sworn and signed before me
in the District Court of Nicosia
on ......... 20th May 2005

P. REGISTRAR
ΚΩΝΣΤΑΝΤΙΑ ΑΓΑΠΙΟΥ

3

Exhibit AGL6A

# ΕΠΑΡΧΙΑΚΟ ΔΙΚΑΣΤΗΡΙΟ ΛΕΥΚΩΣΙΑΣ

Ενώπιον: Δ. Μιχαηλίδου, Π.Ε.Δ.

Αρ. Αγωγής: 7462/02

Μεταξύ:

Kayat Trading Limited

Ενάγουσας

και

Genzyme Corporation

Εναγομένης

-------------------

## Αίτηση ημερ. 6.12.02

31.3.2004.

Για τους Αιτητές: κ. Π. Πολυβίου

Για τους Καθ΄ ων η Αίτηση: κ. Α. Λαδάς

## ΕΝΔΙΑΜΕΣΗ ΑΠΟΦΑΣΗ

Με το γενικώς οπισθογραφημένο κλητήριο που καταχωρίστηκε στις 9.7.02 η ενάγουσα εταιρεία, η οποία φέρεται να έχει την έδρα της στη Λευκωσία, αξιώνει εναντίον της εναγομένης, εκ Μασαχουσέτης ΗΠΑ, εταιρείας τις πιο κάτω θεραπείες:

2

«(A)  Αποζημιώσεις,       περιλαμβανομένων       παραδειγματικών
αποζημιώσεων, για παράβαση συμβολαίου συναφθέντος στην
Λευκωσία, κατά/ή περί την 15η Ιουλίου 1997, με το οποίο οι
εναγόμενοι διόρισαν τους ενάγοντες σαν διανομείς των προϊόντων
τους σε διάφορες χώρες του εξωτερικού, και οι οποίες παραβάσεις
έλαβαν χώρα κατά/ή περί τα έτη 1997 και 1998.

(B)  Αποζημιώσεις,       περιλαμβανομένων       παραδειγματικών
αποζημιώσεων, για δόλο και/ή απάτη και/ή ψευδείς παραστάσεις
εκ μέρους των εναγομένων και/ή υπαλλήλων ή εκπροσώπων των
εναγομένων, κατά τη σύναψη και/ή εκτέλεση του πιο πάνω
συμβολαίου.»

Προηγουμένως    είχε    εξασφαλιστεί    άδεια    για    σφράγιση,
καταχώρηση και επίδοση του Κλητηρίου εκτός της δικαιοδοσίας των
Κυπριακών Δικαστηρίων: στην πολιτεία της Μασσαχουσέττης.

Η εναγόμενη εταιρεία καταχώρησε εμφάνιση υπό διαμαρτυρία και
ακολούθως, στις 6.12.02, την αίτηση αυτή με την οποία επιδιώκει:

«(α)  Διάταγμα με το οποίο να απορρίπτεται και/ή να παραμερίζεται
και/ή να ακυρώνεται η αγωγή και/ή το κλητήριο ένταλμα και/ή η
μέχρι σήμερα διαδικασία στην παρούσα αγωγή.

και/ή

(β)  Διάταγμα με το οποίο να απορρίπτεται και/ή να παραμερίζεται
και/ή να ακυρώνεται το διάταγμα επίδοσης και/ή η επίδοση της
παρούσας αγωγής.»

3

και/ή

(γ)    Διάταγμα με το οποίο να αναστέλλεται κάθε διαδικασία και/ή περαιτέρω διαδικασία στην παρούσα αγωγή.»

Η αίτηση βασίζεται επί των άρθρων 2 και 21 του Περί Δικαστηρίων Νόμου 14/60, επί του άρθρου 3 του Περί Πολιτικής Δικονομίας Νόμου (Κεφ. 6), επί των Θεσμών Περί Πολιτικής Δικονομίας Δ.22, θθ2 και 3, Δ.6 θθ 1, 2, 4, 5, 6 και 7, Δ.16, θ.9, Δ.19, θ.26, Δ.27, θ.3, Δ. 48, θθ 1, 2, 3, 4, 8.

Τα γεγονότα εκτίθενται στην ένορκη δήλωση της δικηγόρου Λίτσας Μαλέκου.  Οι λόγοι που προβάλλονται, τους οποίους και παραθέτω συνοπτικά:

(α)  Η ένορκη δήλωση που συνόδευσε τη μονομερή αίτηση των εναγόντων ημερ. 8.7.02 μέσα στα πλαίσια της Γενικής Αίτησης 149/02 είναι ανεπαρκής και/ή πάσχει νομικά: τα γεγονότα «δεν βρίσκονται εντός της προσωπικής γνώσης του Ενόρκως Δηλούντος, αυτός δεν αποκαλύπτει τις πηγές της γνώσης του».

(β)  Από τη Σύμβαση προκύπτει ότι το εφαρμοστέο δίκαιο είναι αυτό της Πολιτείας της Μασαχουσέτης, το οποίο και καθορίζει το πού και πότε συνομολογήθηκε η Σύμβαση και κατά πόσο υπήρξε παραβίασή της – Δεν στοιχειοθετείται η δικαιοδοσία των Κυπριακών Δικαστηρίων.

4

(γ)  Διαζευκτικά: η Κύπρος δεν αποτελεί το κατάλληλο και ή αρμόδιο δικαιοδοτικό forum καθότι τα κατ' ισχυρισμό γεγονότα δεν συνδέονται με την Κύπρο:

    (αα)  Εφαρμοστέο δίκαιο είναι αυτό της Μασαχουσέτης.

    (ββ)  Οι εναγόμενοι δεν συνδέονται καθ' οιονδήποτε τρόπο με την Κύπρο.

    (γγ)  Οι κατ' ισχυρισμό παραβάσεις της Σύμβασης δεν έχουν γίνει στην Κύπρο.

Η ένσταση προδιαγράφει τα πιο κάτω:

«1.  Όσα αναφέρει ο Konstantin Meshkov στην ένορκη δήλωσή του ημερομηνίας 8.7.2002 σχετικά με την συνομολόγηση της σύμβασης βασίζονται σε προσωπική του γνώση, διότι, όπως αναφέρει ο ίδιος στην ένορκη δήλωσή του που συνοδεύει την παρούσα ένσταση, κατά τον ουσιώδη χρόνο ήταν υπάλληλος των καθ' ων η αίτηση – εναγόντων, που είχε ασχοληθεί ειδικά για την συνομολόγηση της από πολύ χρόνο και ήταν παρών κατά την υπογραφή της από την τότε διευθύντρια κα Achkar.

2.  Το ερώτημα πού συνομολογήθηκε η σύμβαση, ως και κατά πόσο υπήρξε διάρρηξή της στην Κύπρο, για σκοπούς εφαρμογής της Δ.6, θ.1(ε) των Θεσμών Πολιτικής Δικονομίας, διέπεται από το Κυπριακό δίκαιο, και όχι από αυτό της Πολιτείας της Μασσαχουσέτης.

3.  Διαζευκτικά, αν το δίκαιο που διέπει το πιο πάνω θέμα είναι αυτό της Μασσαχουσέτης (πράγμα που δεν δεχόμαστε), τότε έχει

5

εφαρμογή το τεκμήριο ότι το αλλοδαπό δίκαιο είναι το ίδιο με το
Κυπριακό δίκαιο. Αν οι αιτητές – εναγόμενοι ισχυρίζονται ότι, στα
εν λόγω θέματα, το δίκαιο της Μασσαχουσέτης είναι διαφορετικό
από το Κυπριακό, είναι οι αιτητές – εναγόμενοι που έχουν το
βάρος να προβάλουν και να αποδείξουν τον ισχυρισμό τους, σαν
πραγματικό γεγονός, και όχι οι καθ' ων η αίτηση – ενάγοντες.

4.    Αναφορικά με το θέμα του forum conveniens,

    (α)  είναι οι αιτητές - εναγόμενοι που πρέπει να αποδείξουν ότι το
    Δικαστήριο είναι forum non conveniens, και όχι οι καθ' ων η
    αίτηση – ενάγοντες ότι είναι forum conveniens·

    (β)  η μόνη, ουσιαστικά, σχέση που έχει η παρούσα υπόθεση με
    την Πολιτεία της Μασσαχουσέτης, πέραν από το ότι οι
    αιτητές – εναγόμενοι έχουν την έδρα τους εκεί, είναι ότι το
    δίκαιο που διέπει την σύμβαση (governing law ή proper law
    of the contract) είναι αυτό της Μασσαχουσέτης·

    (γ)  ενόψει του ότι το δίκαιο των συμβάσεων της Μασσαχουσέτης
    βασίζεται στο κοινοδίκαιο, όπως και το Κυπριακό δίκαιο, δεν
    είναι καθόλου δύσκολο για το Κυπριακό δικαστήριο να
    εντοπίσει και να εφαρμόσει τις οποιεσδήποτε διαφορές που
    τυχόν υπάρχουν μεταξύ των δύο δικαίων στην επίλυση των
    επίδικων θεμάτων στην παρούσα αγωγή·

    (δ)  οι αιτητές – εναγόμενοι υποδεικνύουν ότι καταλληλότερο
    δικαστήριο για να εκδικάσει την παρούσα υπόθεση είναι αυτό
    της Πολιτείας της Μασσαχουσέτης, όμως δεν ισχυρίζονται,

6

ούτε εκθέτουν γεγονότα, ως έχουν το βάρος να πράξουν, ότι η εκδίκαση της υπόθεσης στη Μασσαχουσέτη μπορεί να διεξαχθεί με ουσιωδώς ολιγότερη ταλαιπωρία και έξοδα·

(ε) Αντίθετα, είναι η θέση των καθ᾽ ων η αίτηση – εναγόντων ότι η εκδίκαση της υπόθεσης στη Μασσαχουσέτη θα συνεπάγεται πολύ μεγαλύτερη ταλαιπωρία και ιδίως έξοδα καθ᾽ ότι,

i. οι μάρτυρες, που προέρχονται κυρίως από την Ουκρανία, είναι πολύ πιο εύκολο, και φθηνότερο, να έλθουν στην Κύπρο παρά στη Μασσαχουσέτη, και γενικά η προσαγωγή μαρτυρίας θα είναι ευκολότερη και φθηνότερη,

ii. τα έξοδα, ιδίως τα δικηγορικά, θα είναι ολιγότερα στην Κύπρο παρά στη Μασσαχουσέτη·

(στ) Αν υποχρεωθούν οι καθ᾽ ων η αίτηση – ενάγοντες να προσφύγουν στα δικαστήριο της Μασσαχουσέτης, αυτό θα ισοδυναμεί με στέρηση του δικαιώματός τους να προσφύγουν στη δικαιοσύνη, ενόψει του ότι το κόστος διεξαγωγής της υπόθεσης στη Μασσαχουσέτη είναι απαγορευτικό για τους καθ᾽ ων η αίτηση – ενάγοντες.»

Κατόπιν αδείας του Δικαστηρίου και με τη συγκατάθεση της άλλης πλευράς η εναγομένη κατεχώρησε συμπληρωματική ένορκη δήλωση με ισχυρισμούς και θέσεις αναφορικά με το θέμα των αναγκαίων μαρτύρων και των απαραίτητων εγγράφων που θα προσαχθούν κατά τη δίκη.

7

Ενώπιον του Δικαστηρίου υποστηρίχθηκαν αναλυτικά οι πιο πάνω θέσεις με ανάλογα επιχειρήματα και αποφάσεις Κυπριακών και Αγγλικών Δικαστηρίων καθώς και σε σχετικά συγγράμματα στα οποία θα γίνει αναφορά όπου θα κριθεί αναγκαίο.

Οι θεραπείες που επιζητούνται διαζευκτικά με την αίτηση προωθήθηκαν όλες με την αγόρευση του κ. Πολυβίου. Θα προχωρήσω να εξετάσω ένα-ένα τα θέματα με τη σειρά που προωθούνται στην αίτηση.

### Θεραπείες (α) και (β)

Η Αίτηση για εξασφάλιση άδειας του Δικαστηρίου για επίδοση της ειδοποίησης του Κλητηρίου έγινε αποδεκτή από το Δικαστήριο σύμφωνα με τη Δ.6(1) των Κανονισμών Πολιτικής Δικονομίας. Οπότε ανακύπτει το ερώτημα αν η ενάγουσα έχει δείξει εκ πρώτης όψεως καλή αιτία αγωγής και συνδρομή των προϋποθέσεων της Δ.6, κ.(1). Όπως φανερώνεται από την ένορκη δήλωση που καταχωρίστηκε στη Γενική Αίτηση, η οποία επαναλαμβάνεται και υιοθετείται για τους σκοπούς της παρούσας διαδικασίας στην ένσταση των εναγόντων, η επίδικη σύμβαση υπεγράφη στην Κύπρο: Μετά από διαβουλεύσεις μεταξύ των μερών, η γραπτή συμφωνία ετοιμάστηκε από τους ενάγοντες στη Μασσαχουσέτη, υπεγράφη απ᾿ αυτούς και στάλθηκε σε δύο πρωτότυπα στους ενάγοντες στη Λευκωσία για να υπογραφεί από τους τελευταίους (παράγρ. 5 (α) και (β) της ένορκης δήλωσης στη Γενική Αίτηση).

Στις 15.7.97 οι ενάγοντες υπέγραψαν τη συμφωνία στή Λευκωσία, τα δύο πρωτότυπα, και τα απέστειλαν στους εναγομένους. Κατά συνέπεια η συμφωνία υπεγράφη κατά τον ισχυρισμό των εναγόντων στην

8

Κύπρο ή εν μέρει στην Κύπρο.  Αναφορά έγινε στην παράγρ. 15 της συμφωνίας, δυνάμει της οποίας προνοείτο το εφαρμοστέο δίκαιο, αυτό της πολιτείας της Μασσαχουσέτης.   Κατά τους ισχυρισμούς των εναγόντων η πρόνοια αυτή δεν δημιουργεί αποκλειστική δικαιοδοσία.

Στο θ.4 της Δ.6 τίθενται τα κριτήρια βάσει των οποίων κινείται το Δικαστήριο για να εξασκήσει την τελική του κρίση και να εκδώσει το διάταγμα επίδοσης ειδοποίησης του Κλητηρίου Εντάλματος στο εξωτερικό: να διαπιστώσει εκ πρώτης όψεως καλή αιτία αγωγής.

> "Δ.6, θ.4:  Every application for leave to serve a writ of summons or notice thereof on a defendant out of Cyprus shall be supported by affidavit or other evidence satisfying the Court or Judge that the plaintiff has prima facie a good cause of action and showing in what place or country such defendant is or probably may be found, and whether such defendant is a British subject or not, and the grounds upon which the application is made; and no such leave shall be granted unless it shall be made sufficiently to appear to the Court or Judge that the case is a proper one for service out of Cyprus under this Order".

Ο ενόρκως δηλών επικαλείτο στην ένορκη δήλωση που συνοδεύει τη Γενική Αίτηση ότι ήταν διευθυντής των εναγόντων, είχε προσωπική γνώση των γεγονότων και ήταν εξουσιοδοτημένος να προβεί στην ένορκη δήλωση.  Οι Αιτητές προβάλλουν ότι η ένορκος δήλωση είναι ανεπαρκής καθότι δεν απεκάλυψε τις πηγές της γνώσης καινή τα πρόσωπα που του έδωσαν τις πληροφορίες.  Επιπροσθέτως με το ότι έγινε διευθυντής στις 12.8.97, μετά από τη συνομολόγηση της Σύμβασης.

Στην ένσταση που καταχωρίστηκε στα πλαίσια αυτής της Αίτησης, ο ενόρκως δηλών δίνει περαιτέρω λεπτομέρειες για το πώς προέκυψε η προσωπική του γνώση.

Σημειώνω ότι η ακροαματική διαδικασία της αίτησης παρέμεινε στα πλαίσια των ενόρκων δηλώσεων. Κανείς δεν ζήτησε να αντεξετάσει. Ο κ. Πολυβίου επιζητεί ακύρωση του Διατάγματος λόγω: «ανεπάρκειας» της ένορκης δήλωσης. Το επιχείρημα δεν με βρίσκει σύμφωνη. Ο ενόρκως δηλών αναφέρεται σε προσωπική γνώση των γεγονότων. Το γεγονός ότι το πιο πάνω πρόσωπο έγινε διευθυντής των εναγόντων μετά τη συνομολόγηση της σύμβασης δεν τον αποκλείει να είχε προσωπική γνώση. Όταν δε αναφέρεται σε προσωπική γνώση δεν βλέπω πώς θα πρέπει να αναφερθεί σε πηγές ή στα πρόσωπα που τον εφοδίασαν με τις αναγκαίες πληροφορίες. Παραμένει ότι όταν ο ενόρκως δηλών ορκίστηκε για να υποστηρίξει την αίτηση: 8.7.02 ήταν διευθυντής των εναγόντων. Δεν τίθεται λοιπόν εδώ θέμα απόκρυψης ουσιωδών γεγονότων ή παρατυπίας ή ανεπάρκειας της ένορκης δήλωσης. Μια μονομερής αίτηση είναι βεβαίως υψίστης πίστεως και παράλειψη παρουσίασης ουσιαστικών γεγονότων ενώπιον του Δικαστηρίου δυνατό να οδηγήσει στην ακύρωση της διαταγής που δόθηκε κατόπιν υποβολής της. Το Δικαστήριο κρίνει αν το γεγονός που παραλήφθηκε είναι ουσιαστικό, αν δεν ήταν γνωστό στον αιτητή και δεν μπορούσε εύλογα να γίνει γνωστό και αν η παράλειψη έγινε χωρίς σκοπό παραπλάνησης.

Οι πιο πάνω αρχές έχουν κυρίως διαμορφωθεί σε υποθέσεις μονομερών αιτήσεων για εξασφάλιση προσωρινών διαταγμάτων ή για εξασφάλιση επίδοσης του Κλητηρίου Εντάλματος εκτός δικαιοδοσίας, όπως η περίπτωσή μας. (Βλ. **Larissa (Αρ. 2)** (1997) 1 ΑΑΔ 1333, **Demstar Limited v. Zim Israel Navigation Co. Ltd κ.ά.** Αίτηση για

10

Αναθεώρηση στην Αγ. Ναυτοδικείου 157/90, ημερ. 30.5.96, R. v. Kensington Commissioners, ex. P. Polignac (1917) 1 K.B. 486, R. v. Barnes, ex p. Vernon (1910) 102 L.T. 860).

Αυτό που εξετάζεται με την αίτηση επίδοσης εκτός δικαιοδοσίας είναι κατά πόσο ο Αιτητής είχε δείξει εκ πρώτης όψεως (prima facie) καλή αιτία αγωγής, ώστε να συντρέχουν οι προϋποθέσεις που τάσσει η Δ. 6, θ. 1 για να επιτραπεί η επίδοση της ειδοποίησης του κλητηρίου στο εξωτερικό. Το Δικαστήριο κατά την εξάσκηση της διακριτικής του ευχέρειας, εξετάζει, σ' εκείνο το στάδιο, αν αποκαλύπτεται αιτία αγωγής. Για να καταλήξει βασίζεται αποκλειστικά στα γεγονότα, όπως περιέχονται στην ένορκη δήλωση και σε αντικειμενική θεώρηση των γεγονότων αυτών. Όχι βέβαια στην αξιολόγηση της ουσιαστικής αξίας τους (βλ. Sekavin S.A. v. The Ship "Platon" Ch. (1987) 1 CLR 297 και Nozaki & Co. Ltd κ.ά. v. Σιουκιούρογλου & Υιοί Λτδ (1997) 1 ΑΑΔ 1689).

Από τη Σύμβαση, επιχειρηματολογούν περαιτέρω οι Αιτητές, προκύπτει ότι εφαρμοστέο δίκαιο είναι το δίκαιο της Μασσαχουσέτης. Δεν προσφέρθηκε μαρτυρία, ούτε αναφορά γίνεται στην ένορκη δήλωση στο τι προνοεί το αλλοδαπό αυτό δίκαιο. Έτσι αυτό «αποτελεί σοβαρό κενό στην υπό κρίση ένορκη δήλωση, καθότι πλείστοι όσοι ισχυρισμοί του ενόρκως δηλούντος αναφορικά με τη συνομολόγηση της Συμφωνίας ....... παραμένουν χωρίς οποιοδήποτε νομικό έρεισμα» και κατά συνέπεια «δεν στοιχειοθετείται η δικαιοδοσία των Κυπριακών Δικαστηρίων».

Στην ένορκη δήλωση που συνοδεύει την αίτηση για επίδοση εκτός δικαιοδοσίας γίνεται αναφορά στο αλλοδαπό δίκαιο, παράγρ. 8 και στη δικαιοδοσία των Δικαστηρίων της αλλοδαπής με την προβολή της θέσης

11

ότι δεν δημιουργείται αποκλειστική δικαιοδοσία των αλλοδαπών Δικαστηρίων.

> «8. This Agreement shall be governed by and interpreted in accordance with the laws of the commonwealth of Massachussetts, U.S.A. and the parties agree to submit to the jurisdiction of the courts of Massachusetts, U.S.A., but the parties may enforce this Agreement in any court of competent jurisdiction.»

Στην ένορκη δήλωση που συνοδεύει τη Γενική Αίτηση γινόταν ρητή αναφορά στο πώς και κάτω από ποιες συνθήκες συνομολογήθηκε, κατά τις εισηγήσεις των εναγόντων στην Κύπρο, η επίδικη Σύμβαση. Οι εναγόμενοι στην εδώ αίτηση δεν προβάλλουν κανένα ισχυρισμό, ούτε προβάλλουν αντίθετες θέσεις γύρω από την υπογραφή ή την κατ' ισχυρισμό παράβαση της επίδικης συμφωνίας. Ο τρόπος με τον οποίο εισάγουν τις θέσεις τους είναι, θα έλεγα, από μόνος του αρκετός για να επιτρέψει στο Δικαστήριο να απορρίψει τα (α) και (β) αιτήματά τους: «Μετά από την κατ' ισχυρισμό συνομολόγηση της Σύμβασης» «η κατ' ισχυρισμό Σύμβαση» «η κατ' ισχυρισμό παραβίαση αυτής».

Οι διάδικοι συμφωνούν περί του εφαρμοστέου δικαίου.   Δεν απαιτείται λοιπόν μαρτυρία για να αποδειχθεί εκείνο στο οποίο και οι δύο διάδικοι συμφωνούν. (Βλ. **Zeeland Navigation Company Ltd v. Banque Worms**, Αίτηση για Αναθεώρηση στην Αγ. Ναυτοδικείου Αρ. 51/98, ημερ. 18.5.00). Ελλείψει μαρτυρίας μπορεί να τεκμαρθεί ότι το Κυπριακό Δίκαιο δεν διαφέρει. (Βλ. **Dicey & Morris**, πιο πάνω, σελ. 238). Το βάρος της απόδειξης του αλλοδαπού δικαίου το φέρει εκείνος που στηρίζει την αξίωση ή την υπεράσπισή του σ' αυτό. Αν το μέρος

12

που το επικαλείται δεν προσφέρει μαρτυρία ή αν η μαρτυρία είναι ανεπαρκής, το Δικαστήριο εφαρμόζει το Κυπριακό. Το ημεδαπό δίκαιο τεκμαίρεται το ίδιο με το αλλοδαπό, μέχρι αποδείξεως του εναντίον. Η πλευρά των Αιτητών δεν προσέφερε μαρτυρία περί της όποιας διαφοράς. Το Δικαστήριο, στο πλαίσιο της Γενικής Αίτησης κρίνω ότι εξετάζει το θέμα εφαρμόζοντας το Κυπριακό Δίκαιο, εδώ όπου η Συμφωνία έχει καταρτισθεί κατά τους ισχυρισμούς των εναγόντων. Ο κ. Λαδάς εισηγείται ότι τα γεγονότα στη Γενική Αίτηση ενέτασσαν την υπόθεση κάτω από τα πλαίσια της Δ.(1) παραπέμποντας στο σύγγραμμα Dicey & Morris The Conflict of Laws, 10ʰ έκδοση, σελ. 204. Συμφωνώ με την εισήγηση. Στην περίπτωση όπου τα μέρη διαπραγματεύονται μέσω αλληλογραφίας από διαφορετικές χώρες, η σύμβαση θεωρείται ότι έγινε εκεί απ' όπου απεστάλη η σχετική επιστολή αποδοχής.

Με βάση το πιο πάνω δοσμένο πλαίσιο και με τα γεγονότα, όπως αποκαλύφθηκαν, το Δικαστήριο ενήργησε μέσα στα ορθά πλαίσια και εξέδωσε τα ανάλογα διατάγματα. Κατά συνέπεια οι θεραπείες υπό στοιχεία (α) και (β) απορρίπτονται.

Έρχομαι τώρα να εξετάσω το θέμα μέσα στα πλαίσια της Δ.27, θ.3.

Η βάση της Αγωγής θεωρείται ότι έχει προκύψει εντός της δικαιοδοσίας εάν η σύμβαση έχει συναφθεί εκεί ή αν σ' αυτήν έχει επέλθει η διάρρηξη της συμφωνίας, αναλόγως της περίπτωσης (βλ. και C & K Kyriakou & Αφοί Λτδ v. Ιωάννου (1990) 1 ΑΑΔ 479. Το πρωτόδικο Δικαστήριο θα εξετάσει το θέμα της δικαιοδοσίας, και μόνο αν κρίνει ότι έχει δικαιοδοσία προχωρεί να επιληφθεί της ουσίας της υπόθεσης. (Βλ. Kolokoudias v. Varnavidou (1988) 1 ΑΑΔ 566).

13

Όμως, για να το πράξει θα πρέπει να έχει όλα τα γεγονότα ενώπιον του ως αδιαμφισβήτητα ή παραδεκτά (βλ. **Θεοχάρους ν. Παστελλή** (1993) 1 ΑΑΔ 240). Το δε πλαίσιο της διαφοράς προσδιορίζεται από τα γεγονότα που συνθέτουν την απαίτηση. (Βλ. **Sevegep Ltd v. United Sea Transport** (1989)1 ΑΑΔ(Ε) 729, **Mourtzinos Cruises Ltd** (1992) 1 ΑΑΔ 1160). Το θέμα της δικαιοδοσίας, ως θέμα δημόσιας πολιτικής, μπορεί να εγερθεί σε οποιοδήποτε στάδιο της διαδικασίας, ακόμη και αυτεπαγγέλτως.

Το άρθρο 21 του Περί Δικαστηρίων Νόμου 14/60 καθορίζει την κατά τόπο αρμοδιότητα του Δικαστηρίου.

«21(1) Το Επαρχιακόν Δικαστήριον, τηρουμένων των διατάξεων του άρθρου 19, θα έχη πρωτόδικον δικαιοδοσίαν ίνα ακούη και αποφασίζη οιανδήποτε αγωγήν συμφώνως προς τας διατάξεις του άρθρου 22 οσάκις –

   (α)  η βάσις της αγωγής έχη προκύψει είτε καθ' ολοκληρίαν είτε εν μέρει εντός των ορίων της επαρχίας δι' ην το Δικαστήριον καθιδρύθη·

   (β)  Ο εναγόμενος ή οιοσδήποτε των εναγομένων, κατά τον χρόνον της εγέρσεως της αγωγής, διαμένη ή διεξάγη επάγγελμα εντός της επαρχίας δι' ην το Δικαστήριον καθιδρύθη·

   (γ)  πάντων των διαδίκων όντων Κυπρίων είτε η βάσις της αγωγής προέκυψεν, εν όλω ή εν μέρει, εντός των Κυριάρχων

14

Περιοχών των Βάσεων ή ο εναγόμενος ή οιοσδήποτε των εναγομένων διαμένη ή διεξάγη επάγγελμα εντός αυτών.

..............................................................................................
...»

Σχετικό με το θέμα της δικαιοδοσίας είναι επίσης το ερμηνευτικό άρθρο 2 του ιδίου Νόμου, στο οποίο δίδεται ο εξής ορισμός στη φράση «βάσις της αγωγής»: άρθρο 21(α) και (γ):

«βάσις της αγωγής' περιλαμβάνει το σύνολον των γεγονότων των θεμελιούντων το αγώγιμο δικαίωμα, περί ου η αγωγή, αλλά εις αγωγάς εκ συμβάσεως δεν σημαίνει κατ' ανάγκην ολόκληρον την βάσιν της αγωγής. Βάσις της αγωγής θα θεωρήται ότι έχει προκύψει εντός της δικαιοδοσίας εάν η σύμβασις συνήφθη εντός αυτής, καίτοι η διάρρηξις δυνατόν να επήλθεν αλλαχού, και επίσης εάν η διάρρηξις επήλθεν εντός της δικαιοδοσίας, κατοίτοι η σύμβασις δυνατόν να συνήφθη αλλαχού».

Για το θέμα βλ. <u>Ραδιοφωνικό Ίδρυμα Κύπρου κ.ά. ν. Άνδρου Νικολαΐδη</u> (1993) 1 ΑΑΔ 364:

«Η ουσία της αγωγής ταυτίζεται με τη βάση της αγωγής, όπως αυτή καθορίζεται στο άρθρο 2 του Ν.14/60 και περιλαμβάνει το σύνολο των γεγονότων «των θεμελιούντων το αγώγιμο δικαίωμα» .............. «Η αγωγή μπορεί να έχει μονομερή ή πολυμερή βάση». .............. Ή Δ.13 των θεσμών Πολιτικής Δικονομίας καθιστά δυνατή τη

15

στοιχειοθέτηση δύο ή περισσοτέρων βάσεων αγωγής ............. Όπου συνενώνονται δύο ή περισσότερες βάσεις αγωγής στο ίδιο ένδικο μέσο η ουσία της αγωγής σύγκειται από το άθροισμα των βάσεων της αγωγής.»

Η Έκθεση Απαιτήσεως είναι η αποκλειστική πηγή αναζήτησης της δικαιοδοσίας του Δικαστηρίου. Εδώ το μόνο που υπάρχει ενώπιόν μου είναι το Γενικώς Οπισθογραφημένο Κλητήριο Ένταλμα δυνάμει της Δ. 2, θ.1. Η ένορκος δήλωση των Αιτητών δεν κάνει ουσιαστικά παραδεκτή τη Σύμβαση, τα της υπογραφής της και τις περιβάλλουσες συνθήκες γύρω από το πού υπεγράφη ή ολοκληρώθηκε ή διαρρήχθηκε, αν επεσυνέβη κάτι τέτοιο. Ό,τι εισήχθη εκ των υστέρων με την αγόρευση του κ. Πολυβίου υπό μορφή επιχειρηματολογίας, γύρω από τις συνθήκες της υπογραφής της και το διέπον δίκαιο δεν μπορούν να ληφθούν υπόψη μιας και δεν τέθηκαν ούτε στην Αίτηση, ούτε στην ένορκη δήλωση που τη συνόδευε. Παρέμειναν θεωρητικά και θα αγνοηθούν παντελώς. (Βλ. **Mitsui Co Ltd and others v. Rocwellmarie Ltd and another** (1989) 1 ΑΑΔ 112).

Ένα από τα επίδικα θέματα της παρούσης αίτησης είναι κατά πόσο τα Κυπριακά Δικαστήρια έχουν συντρέχουσα δικαιοδοσία, δικαιοδοσία την οποία κατά το ένα σκέλος της οι ενάγοντες θεμελιώνουν στην υπογραφή της Συμφωνίας στην Κύπρο. Το άλλο σκέλος, αυτό της διάρρηξης αστικών αδικημάτων παρέμεινε ουσιαστικά χωρίς υποστήριξη. Αυτό όμως θα ήταν αδιάφορο εφόσον αρκεί θεμελίωση της δικαιοδοσίας έστω και της μιας από τις δύο επικαλούμενες βάσεις της αγωγής. Από τη στιγμή λοιπόν που τα γεγονότα δεν είναι παραδεκτά καταλήγω ότι δεν μπορώ να εξάγω τελικό συμπέρασμα ως προς το ποιοι ισχυρισμοί είναι αληθινοί ή όχι (για το πού και κάτω από ποιες συνθήκες

16

υπεγράφη η Συμφωνία) και κατά συνέπεια με βάση το υλικό που έχω ενώπιόν μου ότι θα ήταν πρόωρο να αποφασίσω το θέμα της δικαιοδοσίας σ´ αυτό το στάδιο. Αυτό θα οδηγούσε στο συμπέρασμα ότι το Δικαστήριο θα έκρινε το θέμα της δικαιοδοσίας όχι με βάση την Έκθεση Απαιτήσεως, που σημειώνω ότι ακόμη δεν έχει καταχωριστεί, αλλά με βάση τους ισχυρισμούς που εμπεριέχονται στις ένορκες δηλώσεις. Ότι το Δικαστήριο θα αναγκαστεί να αποφασίσει διάφορα σημεία που αφορούν στην επίδικη συμφωνία, χωρίς προηγουμένως να ακούσει μαρτυρία, ότι σε τελευταία ανάλυση εξετάζοντας τις συνθήκες συνομολόγησης της σύμβασης θα είναι ως να αποφασίζει θέματα αξιοπιστίας, πράγμα που δεν είναι επιθυμητό στο παρόν στάδιο.

Η Δ.19, κ. 6 και η Δ. 27, κ. 3 των θεσμών Πολιτικής Δικονομίας, παρέχουν το υπόβαθρο για καταχώρηση αίτησης για διαγραφή δικογράφου. «Η διαγραφή δικογράφου, και ιδιαίτερα δικογράφου με το οποίο ο διάδικος επικαλείται την άσκηση της δικαιοδοσίας του Δικαστηρίου, αποτελεί εξαιρετικό μέτρο, το οποίο δικαιολογείται μόνο εφόσον το δικόγραφο κρίνεται αναντίλεκτα ανυπόστατο. Διαφορετικά η διαγραφή θα συνεπαγόταν και παραβίαση δικαιώματος διαδίκου να προσφύγει ενώπιον Δικαστηρίου στο οποίο δικαιούται να προσφύγει βάσει του Συντάγματος, το οποίο κατοχυρώνεται από το άρθρο 30.1 του Συντάγματος. (Βλ. **In Re Pelmaco Development Ltd** (1991) 1 ΑΑΔ 246, 355 και **Λοΐζος Λουκά & Υιός Λτδ v. Εθνικής Τράπεζας της Ελλάδος Α.Ε.** (1999) 1 ΑΑΔ 1316).

Είναι η κατάληξή μου ότι δεν είναι η κατάλληλη περίπτωση που να δικαιολογούσε τερματισμό της διαδικασίας στο ξεκίνημά της. Με όλα τα ενώπιόν μου δεδομένα δεν είναι δυνατή η απόρριψη της αγωγής, ούτε και κάτω από τις πρόνοιες της Δ.27, θ.3:

17

<u>Θεραπεία (γ)</u>

Παραμένει ένα ακόμη ζήτημα: της αναστολής της διαδικασίας για το λόγο ότι το Κυπριακό Δικαστήριο δεν αποτελεί το κατάλληλο και/ή αρμόδιο δικαιοδοτικό forum για την εκδίκαση της αγωγής.

Σε μια από τις πιο πρόσφατες αποφάσεις του Ανωτάτου Δικαστηρίου **Zeeland Navigation Company Ltd v. Banque Worms**, Αίτηση για Αναθεώρηση στην Αγ. Ναυτοδικείου Αρ. 51/98, ημερ. 18.5.00, αναλύθηκαν οι κανόνες που διέπουν τα του «forum non convenience». Βασική προϋπόθεση είναι η ύπαρξη δυνατότητας επιλογής μεταξύ των Δικαστηρίων δύο τουλάχιστον χωρών, στο καθένα από τα οποία είναι δυνατή η κατάθεση και εκδίκαση της Αγωγής. «Η ύπαρξη δυνατότητας επιλογής μεταξύ των Δικαστηρίων, δύο τουλάχιστον χωρών στο καθένα από τα οποία είναι δυνατή η κατάθεση και εκδίκαση της Αγωγής». Ως προς τη διαφορά μεταξύ των αρχών που εφαρμόζονται στις περιπτώσεις όπου επιζητείται η αναστολή της διαδικασίας ή η συνέχιση της διαδικασίας στα ξένα Δικαστήρια, και σ' αυτές που εφαρμόζονται σε περίπτωση αναστολής της διαδικασίας σε περίπτωση συμβολαίων που ενσωματώνουν ρήτρα αποκλειστικής δικαιοδοσίας. Βλ. **Phassouri Plautations v. Adriatica** (1985) 1 CLR 290.

Εδώ ο κ. Πολυβίου, και πολύ ορθά κατά τη γνώμη μου έπραξε, δεν υποστήριξε την ύπαρξη ρήτρας αποκλειστικής δικαιοδοσίας. Εισήγαγε τη θέση της «πρωτογενούς» δικαιοδοσίας των ξένων Δικαστηρίων, έναντι της «δευτερογενούς» δικαιοδοσίας άλλου δικαστηρίου και/ή των Κυπριακών. Με δεδομένη αυτή τη θέση και από ανάγνωση της σχετικής πρόνοιας, προκύπτει με ασφάλεια ότι όντως δεν ενσωματώνεται ρήτρα

18

αποκλειστικής     δικαιοδοσίας,     αλλά     καθορίζεται     συντρέχουσα
δικαιοδοσία.     Αφήνεται, κρίνω, με την παράγρ. 15 της επίδικης
Συμφωνίας, στα μέρη, δυνατότητα εφαρμογής της Συμφωνίας σε
οποιοδήποτε άλλο αρμόδιο Δικαστήριο.

Αναστολή μπορεί να παραχωρηθεί μόνο εκεί όπου το Δικαστήριο
ικανοποιείται ότι υπάρχει κάποιο άλλο διαθέσιμο forum, αρμόδιο και
κατάλληλο να εκδικάσει την αγωγή και στο οποίο η υπόθεση μπορεί να
εκδικαστεί πλέον πρόσφορα για το συμφέρον όλων των μερών, (βλ.
**Spiliada Maritime Corporation v. Cansulex Ltd** (1986) 3 All E.R.
843), αλλά και ότι η αναστολή δεν *πρέπει* να *αποστερείσει* τον ενάγοντα
από ένα προσωπικό ή διαδικαστικό πλεονέκτημα.     (Βλ. **Dolphin**
**Shipping Co Ltd. V. Cartieri** (1984) 1 CLR  853).

Το βάρος της απόδειξης, ότι δηλαδή η αναστολή είναι
επιβεβλημένη, το φέρει σε κάθε περίπτωση ο εναγόμενος.  «Πρέπει
πρόσθετα να δείξει όχι μόνο ότι η Κύπρος δεν είναι το κατάλληλο forum,
αλλά ότι το άλλο forum καθαρά ή ευδιάκριτα είναι κατάλληλο».  Βλ.
**Zeeland** (πιο πάνω), καθώς και τις σχετικές αποφάσεις Αγγλικών
Δικαστηρίων που υιοθετούνται εκεί.

Πριν σχηματίσει κρίση για το κατάλληλο forum, συνεχίζει η
απόφαση **Zeeland**, το Δικαστήριο έχει να σταθμίσει μια σειρά από πολλά
στοιχεία  με σημαντικό το εφαρμοστέο δίκαιο.     Αλλά και άλλους
παράγοντες:  τους μάρτυρες, την ευχερέστερη διεξαγωγή της δίκης ή τις
δαπάνες που συνεπάγεται.  Όποια όμως και αν είναι τα στοιχεία αυτά,
πρέπει «να δακτυλοδείχνουν το δικαστήριο» με το οποίο η αγωγή έχει το
στενότερο και ρεαλιστικότερο σύνδεσμο.  (Βλ. **The Abidin Daver**
(1984) 1 All ER 470).

19

Στη **Spiliada** απαριθμούνται μερικοί παράγοντες που πρέπει να ληφθούν υπόψη από το Δικαστήριο και οι οποίοι δεν είναι εξαντλητικοί.

"the availability of witnesses ...... , the law governing the relevant transaction....., the places where the parties respectively reside or carry on business, and whether the plaintiff "can obtain justice in the foreign jurisdiction".

(Βλ. επίσης την Αίτηση για Αναθεώρηση αρ. 132/97 **Lexicon Shipping Co Ltd v. Remontntowa Gdansk Shiprepair Yard** ημερ. 19.7.00, όπου γίνεται εκτενής αναφορά στη νομολογία και τη **Λοΐζος Λουκά** (πιο πάνω).

Στη συμπληρωματική ένορκη δήλωση των Αιτητών, που καταχωρίστηκε κατόπιν άδειας του Δικαστηρίου και με τη σύμφωνη γνώμη των Καθ' ων η Αίτηση, σημαντικός αριθμός μαρτύρων, έξι στον αριθμό, που θα δώσουν μαρτυρία, βρίσκονται στην εργοδοσία των εναγομένων (πλην ενός) και είναι κάτοικοι ΗΠΑ. Παράλληλα υπάρχει σημαντικός αριθμός εγγράφων και στοιχείων που βρίσκεται στις ΗΠΑ.

Η πλευρά των Καθ' ων η Αίτηση δεν αναφέρεται σε αριθμό μαρτύρων. Το πλείστο όμως μέρος της μαρτυρίας βρίσκεται στην Ουκρανία, το ίδιο και οι μάρτυρές της. Πλείστο δε μέρος της αλληλογραφίας διεξήχθη μεταξύ του γραφείου των Καθ' ων η Αίτηση στη Λευκωσία και του γραφείου των Αιτητών στην Αγγλία. Ότι σημαντικός αριθμός εγγράφων βρίσκεται στην Αγγλία το υιοθετούν στην επιχειρηματολογία τους και οι Αιτητές.

20

Μια συνολική εξέταση των λεπτομερειών που τέθηκαν από κάθε πλευρά, όπως διευκρινίστηκε και με τις αγορεύσεις των δικηγόρων, φανερώνει αναγκαιότητα προσαγωγής μαρτυρίας προφορικής ή εμπράγματης, από την Ουκρανία, την Κύπρο τις ΗΠΑ και την Αγγλία. Μάρτυρες των εναγόντων όσο και των εναγομένων θα πρέπει να ταξιδέψουν είτε στις ΗΠΑ από την Ουκρανία και την Κύπρο, είτε από τις ΗΠΑ στην Κύπρο. Η αλληλογραφία ή σχετική έγγραφη απόδειξη από την Αγγλία κρίνω ότι έχει την ίδια δυσκολία και για τα δύο μέρη.

Οι ενάγοντες έχουν την έδρα τους στην Κύπρο και οι εναγόμενοι στις ΗΠΑ. Οι ενάγοντες επέλεξαν τα Δικαστήρια της Κύπρου, ως είχαν δικαίωμα. Το γεγονός ότι αποτάθηκαν σε δικηγόρους στις ΗΠΑ, σε μια προσπάθεια διευθέτησης που απέτυχε, δεν φανερώνει, καταλήγω, σε επιλογή του αλλοδαπού «forum». Σημασία έχει στο τέλος ότι δεν έχει εγερθεί Αγωγή στις ΗΠΑ για επίλυση της εδώ διαφοράς, ούτε και υπήρξε κρίνω υποταγή (submission) στη δικαιοδοσία των Δικαστηρίων της Μασαχουσέττης. Δεν βρίσκω ακόμα ότι οι ενάγοντες κάνουν «forum shopping». Οι ενάγοντες είχαν επιλογή και την εξάσκησαν. Η προσπάθειά τούς για εξώδικη διευθέτηση στις ΗΠΑ δεν μπορεί να τους αποστερήσει το δικαίωμα να προσφύγουν ενώπιον των Κυπριακών Δικαστηρίων. Τα όσα αναφέρονται γύρω από το θέμα των εξόδων για καταχώρηση Αγωγής στις ΗΠΑ δεν αμφισβητήθηκαν από τους Αιτητές. Τα έξοδα τα οποία θα πρέπει να καταβληθούν προκαταβολικά ανέρχονται σε ΗΠΑ $300.000, με πιθανότητα σε περίπτωση που η υπόθεση προχωρήσει με καθυστέρηση να υπερβούν τις $750.000. Έξοδα τα οποία δεν θεωρούνται υπερβολικά με τα δεδομένα των ΗΠΑ. Το Δικαστήριο έχει δικαστική γνώση τα της δικηγορικής αμοιβής και τις εφαρμοστέες κλίμακες σε Αγωγές ενώπιον του Επαρχιακού Δικαστηρίου. Μπορώ λοιπόν να καταλήξω ότι τα δικηγορικά έξοδα στις ΗΠΑ θα είναι

21

υπό τις καλύτερες συνθήκες κατά πολύ πιο υψηλά των εξόδων που θα γίνουν στην Κύπρο.   Ο κ. Πολυβίου επιχειρηματολογώντας κάλεσε το Δικαστήριο να μην δώσει ιδιαίτερη βαρύτητα σ' αυτό το θέμα.   Δεν μπορεί, τόνισε, να αποκλειστεί η δικαιοδοσία των αλλοδαπών Δικαστηρίων μόνο λόγω χρημάτων και εξόδων.   Δεν διαφωνώ αν αυτό είναι το μόνο κριτήριο.   Όμως το θέμα των εξόδων είναι ένα από τα στοιχεία που συνεκτιμούνται στο τελικό ζύγισμα του Δικαστηρίου.   Οι δαπάνες της δίκης είναι σχετικές.  (Βλ. **Zeeland**, πιο πάνω, και **Chesire and North** "Private International Law" 12η έκδοση, σελ. 224.

   Όσον αφορά τον τελευταίο ισχυρισμό ότι οι παραβάσεις της σύμβασης δεν έχουν γίνει στην Κύπρο.   Ούτε και αυτό το επιχείρημα βοηθά τους εναγομένους.   Όντως οι παραβάσεις φαίνεται μέσα από την Ένορκη Δήλωση που συνοδεύει τη Γενική Αίτηση να έχουν διαπραχθεί αλλού, στις χώρες παράδοσης των εμπορευμάτων.   Ξένες και με την Κύπρο και με τη Μασαχουσέττη.   Το θέμα όμως της παράβασης της Συμφωνίας ή της παράδοσης των εμπορευμάτων δεν αναπτύχθηκε, ενώπιόν μου.   Θίγηκε εντελώς επιφανειακά και ελλείψει μαρτυρίας δεν μπορεί να εξεταστεί σε βάθος.   Και σ' αυτή όμως την περίπτωση, ούτε και αυτό βοηθά τους Αιτητές.   Αν έχουν διαπραχθεί αλλού, εκτός Κύπρου ή Μασαχουσέττης, και τα δύο Δικαστήρια εξίσου δεν έχουν σχέση.

   Όσον αφορά το θέμα του εφαρμοστέου δικαίου, υιοθετώ όσα έχω αναφέρει πιο πάνω στα πλαίσια του αιτήματος για παραμερισμό του Κλητηρίου.

   Έχοντας υπόψη τις πιο πάνω αρχές και αφού έλαβα υπόψη μου τα στοιχεία που έχω ενώπιόν μου, καταλήγω στο συμπέρασμα ότι οι

22

εναγόμενοι απέτυχαν να με ικανοποιήσουν ότι η Κύπρος δεν είναι το κατάλληλο forum και ότι η Μασσαχουσέττη είναι το πλέον κατάλληλο βήμα. Στην κατάληξή μου αυτή έλαβα υπόψη και τα πιο κάτω στοιχεία:

(α)    ότι η ενάγουσα είναι Κυπριακή εταιρεία με έδρα τη Λευκωσία

(β)    ότι η Σύμβαση συνήφθη στην Κύπρο

(γ)    ότι η ενάγουσα έχει το βάρος απόδειξης της επίδικης Συμφωνίας και αυτή φέρει την ευθύνη να φέρει μαρτυρία για την απόδειξή της

(δ)    ότι αριθμός μαρτύρων, τόσο των εναγόντων όσο και των εναγομένων, θα ταξιδέψουν από το εξωτερικό, Ουκρανία και ΗΠΑ. Όσο δύσκολο είναι να ταξιδέψουν οι μάρτυρες από τις ΗΠΑ στην Κύπρο, το ίδιο δύσκολο είναι να ταξιδέψουν από την Κύπρο ή την Ουκρανία στις ΗΠΑ

(ε)    ότι τα δικηγορικά έξοδα στις ΗΠΑ είναι πολύ πιο ψηλά απ΄ ότι στην Κύπρο και αγγίζουν το όριο του απαγορευτικού για προσφυγή στα Δικαστήρια της Μασαχουσέττης.

Είναι λοιπόν η τελική μου κατάληξη ότι ο Αιτητής δεν έχει αποσείσει το βάρος ότι η Κύπρος δεν αποτελεί το πλέον κατάλληλο βήμα και επομένως και το διαζευκτικό αίτημα για αναστολή της διαδικασίας δεν μπορεί να γίνει δεκτό.

Η αίτηση απορρίπτεται.

23

Τα έξοδα της αίτησης σε βάρος των Αιτητών, τα οποία όμως να καταβληθούν μετά το πέρας της διαδικασίας.

(Υπ.) .........................................

Δ. Μιχαηλίδου, Π.Ε.Δ.

Πιστό Αντίγραφο

Πρωτοκολλητής

/Χ.Θ.

This is Exhibit ....... A G L 6 A.
referred to in the
affidavit of ...................................
....... ANDREAS G. LADAS
dated ....... 20/5/2005
.........................................
Ώ Registrar

ΑΚΥΡΟΝ

20.MAY.2005  15:45     G. & A. LADAS                  NO.2137  P.2/2  EXHIBIT RGLGR

## DISTRICT COURT OF NICOSIA

<u>Before</u>:  D. Michaelidou P.D.C.

<u>Action no</u>: 7462/02

Between:-

Kayat Trading Limited

Plaintiff

and

Genzyme Corporation

Defendant

---

<u>**Application dated 6.12.02**</u>

<u>31.3.2004</u>

For the Applicants:  Mr P. Polyviou
For the Respondents:  Mr A. Ladas

<u>**INTERIM RULING**</u>

By the generally indorsed writ of summons which was filed on 9.7.02 the plaintiff company, which appears to have its seat in Nicosia, claims against the Defendant, from Massachusetts, USA, the following relief:

"(A)   Damages, including exemplary damages, for breach of a contract made in Nicosia on/or about the 15th July, 1997, by which the Defendants appointed the Plaintiffs as distributors of their products in several countries abroad, and which breaches took place in/or about the years 1997 and 1998.

(B)   Damages, including exemplary damages, for fraud and/or deceit and/or false representations on the part of the Defendants and/or their employees or representatives, during the making and/or execution of the above contract."

I

Leave to seal file and serve the writ of summons outside the jurisdiction of the Cypriot Courts, in the state of Massachusetts, was obtained previously.

The Defendant company filed an appearance under protest and then, on 6.12.02, this application by which it seeks:

"(a) Order dismissing and/or setting aside and/or cancelling the action and/or the writ of summons and/or the proceedings until today in this action, and/or

(b) Order dismissing and/or setting aside and/or cancelling the order for service and/or the service in this action, and/or

(c) Order staying proceedings and/or further proceedings in this action. "

The application is based on sections 2 and 21 of the Courts of Justice Law, 14/60, on section 3 of the Civil Procedure Law (Cap. 6), on the Civil Procedure Rules, O.22, rr 2 and 3, O.6 rr 1,2,4,5,6 and 7, O.16, r 9, O.19, r 26, O.27, r 3, O.48, rr 1,2, 3,4,8.

The facts are stated in the affidavit of advocate Litsa Malekou. I set out concisely the reasons put forward:

(a) The affidavit accompanying the ex-parte application of the plaintiffs dated 8.7.02 in the context of General Application 449/02 is insufficient and/or defective in law: the facts "are not within the personal knowledge of the Affiant, he does not reveal the sources of his Knowledge."

(b) It follows from the Contract that the applicable law is that of the State of Massachusetts, which determines the (question of) where and when the Contract was concluded and whether there was breach thereof – The jurisdiction of the Cypriot Courts is not established.

(c) Alternatively; Cyprus is not the appropriate and/or competent jurisdictional forum because the alleged facts are not connected with Cyprus:

(aa) the applicable law is that of Massachusetts;

(bb) the defendants are not connected with Cyprus in any way;

(cc) the alleged breaches of the Contract have not taken place in Cyprus.

The opposition proscribes the following:

"1. What Konstantin Meshkov states in his affidavit dated 8.7.2002 concerning the making of the contract are based on his personal knowledge, because, as he himself states in the affidavit accompanying this opposition, at the material time he was an employee of the respondent – plaintiffs, who had been particularly engaged in its making since a long time and was present at its signing by the then director Mr Achkar.

2

2. The question where the contract was made, as well as whether there was breach thereof in Cyprus, for the purpose of applying O.6, r.1(e) of the Civil Procedure Rules, is governed by Cypriot law, and not by that of the State of Massachusetts.

3. Alternatively, if the law governing the above matters is that of Massachusetts (which we do not accept) then the presumption that foreign law is the same as Cypriot law applies. If the applicant-defendants allege that, in these matters, the law of Massachusetts is different from the Cypriot, it is the applicant-defendants who bear the burden of putting forward and proving their allegation, as a true fact, and not the respondent-plaintiffs.

4. As regards the matter of *forum conveniens*:

(a) it is the applicant-defendants who must prove that the Court is *forum non conveniens*, and not the respondent-plaintiffs that it is *forum conveniens*;

(b) in substance, the only connection which this case has with the State of Massachusetts, apart from the fact that the applicant-defendants have their seat there, is that the governing law of the contract is that of Massachusetts;

(c) given that the contract law of Massachusetts is based on the common law, like the Cypriot law, it will not be at all difficult for the Cypriot Court to identify and apply whatever differences might exist between the two laws in the determination of the matters at issue in this action;

(d) the applicant-defendants suggest that a more appropriate forum to try this case is that of the state of Massachusetts, but neither allege, nor set out facts, as they have the burden of doing, that the trial of the case in Massachusetts can be conducted with substantially less inconvenience and costs;

(e) on the contrary, it is the position of the respondent-plaintiffs that trying the case in Massachusetts shall involve much greater inconvenience and especially costs because,

   i. it is much easier, and cheaper, for the witnesses, who come mainly from the Ukraine, to come to Cyprus than to Massachusetts, and generally the adducing of evidence shall be easier and cheaper,

   ii. the costs, especially advocates' fees, shall be less in Cyprus than in Massachusetts;

(f) If the respondent-plaintiffs are forced to have recourse to the Courts of Massachusetts, this will amount to a deprivation of their right to have recourse to justice, given that the cost of conducting the case in Massachusetts is prohibitive for the respondent-plaintiffs"

With the leave of the Court and the consent of the other side the defendant filed a supplementary affidavit with allegations and positions concerning the matter of the necessary witnesses and essential documents to be adduced at the trial.

3

Before the Court the above positions were supported analytically with corresponding arguments and cases of the Cypriot and English Courts as well as to related textbooks to which reference will be made wherever it shall be deemed necessary.

The remedies which are sought in the alternative in the application were all advanced by Mr Polyviou's address. I shall proceed to examine one by one the matters in the order they are put forward in the application.

### Remedies (a) and (b)

The Application to secure leave of the Court for service of notice of the Writ of Summons was accepted by the Court in accordance with O.6(1) of the Civil Procedure Rules. In which case the question arises whether the plaintiff has shown prima facie a good cause of action and concurrence of the preconditions of O.6, r. 1. As is apparent from the affidavit filed in the General Application, which is repeated and adopted for the purposes of these proceedings in the plaintiffs' opposition, the subject-matter contract was signed in Cyprus: After consultations between the parties, the written agreement was prepared by the defendants in Massachusetts, signed by them and sent in two originals to the plaintiffs in Nicosia to be signed by the latter (para. 5(a) and (b) of the affidavit in the General Application).

On 15.7.97 the plaintiffs signed the agreement in Nicosia, the two originals, and returned them to the defendants. It follows that the agreement was signed, according to the allegation of the plaintiffs, in Cyprus or partly in Cyprus. Reference was made to clause 15 of the agreement, which provided for the applicable law, that of the state of Massachusetts. According to the allegation of the plaintiffs this provision does not create exclusive jurisdiction.

In r. 4 of O.6 are laid down the criteria on the basis of which the Court is moved to exercise its final judgment to issue the order of service of notice of the Writ of Summons abroad: to ascertain a prima facie good cause of action.

> "O.6, r.4: Every application for leave to serve a writ of summons or notice thereof on a defendant out of Cyprus shall be supported by affidavit or other evidence satisfying the Court or Judge that the plaintiff has prima facie a good cause of action and showing in what place or country such defendant is or probably may be found, and whether such defendant is a British subject or not, and the grounds upon which the application is made; and no such leave shall be granted unless it shall be made sufficiently to appear to the Court or Judge that the case is a proper one for service out of Cyprus under this Order".

The affiant invoked that he was director of the plaintiffs, had personal knowledge of the facts and was authorised to make the affidavit. The Applicants put forward that the affidavit is insufficient because he did not reveal the sources of his knowledge and/or the persons who gave the information. In addition to that he became director on 12.8.97, after the conclusion of the Contract. In the opposition filed in the context of this Application, the affiant gives further details as to how his personal knowledge came about.

4

I note that the hearing of this application remained within the frame-work of the affidavits. No one asked to cross-examine. Mr Polyviou seeks cancellation of the Order due to "insufficiency" of the affidavit. The argument does not find me in agreement. The affiant refers to personal knowledge of the facts. The fact that this person became director of the plaintiffs after the conclusion of the contract does not preclude him from having personal knowledge. And when he refers to personal knowledge I do not see how he should refer to sources or to the persons who provided him with the necessary information. It remains (the case) that when the affiant swore in support of the application, 8.7.02, he was a director of the plaintiffs. No matter, therefore, of hiding of material facts or irregularity or insufficiency of the affidavit is raised here. An ex-parte application is of course of the highest fidelity and failure to present substantial facts before the Court may lead to the cancellation of the order given following its submission. The Court will judge whether the omitted fact is substantial, whether it was not known to the applicant and could not reasonably have become known and whether the omission was made without intention t o mislead.

The above principles have been formed mainly in cases of ex-parte applications for the securing of interim orders or the securing of service of the Writ of Summons outside the jurisdiction, as (is) our case. (Vd. **Larissa (No. 2)** (1997) 1 C.L.R. 1333, **Demstar Limited v. Zim Israel Navigation Co. Ltd a.o.**, Petition for Review in Admiralty action 157/90, dated 30.5.96. **R.v. Kensington Commissioners, ex P. Polignac** (1917) K.B. 486, **R.v. Barnes, ex p. Vernon** (1910) 102 L.T. 860).

What is examined in the application for service outside the jurisdiction is whether the Applicant has shown a prima facie good cause of action, so that the prerequisites set by O.6, r.1 to allow service of the writ of summons abroad apply. In the exercise of its discretion the court examines, at that stage, whether a cause of action is revealed. In order to come to a conclusion it bases itself exclusively on the facts, as they appear in the affidavit and on an objective view of those facts. Not, of course, on an evaluation of their substantial value. (Vd. **Sekavin S.A. v. The Ship "Platon"** Ch. (1987) 1 CLR 297 and **Nozaki & Co. Ltd a.o. v. Shioukiurogiou & Sons Ltd** (1997) 1 CLR (1689).

The Applicants argue further that it arises from the Contract that the applicable law is the law of Massachusetts. No evidence was offered, nor is reference made in the affidavit as to what that foreign law provides. So this "is a serious gap in the affidavit under consideration, because most allegations of the affiant concerning the making of the Contract ........ remain without any legal foundation" and as a result "the jurisdiction of the Cypriot Courts is not established."

In the affidavit accompanying the application for service outside the jurisdiction reference is made to the foreign law, paragraph 8 and to the jurisdiction of the foreign Courts by advancing the position that no exclusive jurisdiction of the foreign Courts is created.

> "8. This Agreement shall be governed by and interpreted in accordance with the laws of the commonwealth of Massachusetts, U.S.A. and the parties agree to submit to the jurisdiction of the courts of Massachusetts, U.S.A., but the parties may enforce this Agreement in any court of competent jurisdiction."

In the affidavit accompanying the General Application express reference was made as to how and under what circumstances the subject-matter Contract was entered into in Cyprus, according to the allegations of the plaintiffs. In this application the defendants do not put forward any allegation, nor do they put forward opposing positions as to the signing or the alleged breach of the subject-matter agreement. The way they introduce their positions is, I would say, enough by itself to allow the Court to dismiss their prayers (a) and (b): "After the alleged making of the Contract" "the alleged Contract" "the alleged breach thereof".

The parties agree as to the applicable law. Therefore, no evidence is required to prove that on which both parties agree. (Vd. **Zeeland Navigation Company Ltd v. Banque Worms**, Petition for Review in Admiralty Action no. 51/98, dated 18.5.00). In the absence of evidence it may be presumed that Cypriot Law is not different. (Vd. **Dicey & Morris**, supra, p. 238). The burden of proving foreign law is borne by him who bases his claim or defence on it. If the party invoking it does not offer evidence or if the evidence is insufficient, the Court applies Cypriot (law). Domestic law is deemed to be the same as foreign law, until proof of the contrary. The side of the Applicants did not offer evidence on the dispute if any. In the context of the General Application, in my judgment, the Court examines the matter applying Cypriot Law, here where the Agreement has been made according to the allegations of the plaintiffs. Mr Ladas submits that the facts in the General Application brought the case within the framework of O.(1) referring to the textbook **Dicey & Morris The Conflict of Laws**, 10th edition, p. 204. I agree with the submission. In the case where the parties negotiate via correspondence the contract is considered to have been made where the relevant letter of acceptance was sent from.

On the basis of the given context and the facts as revealed, the Court acted within the correct framework and issued the corresponding orders. Consequently, the remedies under (a) and (b) are dismissed.

I come now to examine the matter in the context of O.27, r.3.

The basis of the Action is considered to have arisen within the jurisdiction if the contract was made there or if the breach of the agreement occurred there, as the case may be. (Vd. **C & K Kyriakou & Bros Ltd v. Ioannou** (1990) 1 CLR 479, The Court of first instance shall examine the matter of jurisdiction, and only if it considers that it has jurisdiction proceeds to deal with the substance of the case (Vd. **Kolokoudias v. Varnavidou** (1988) 1 CLR 566). In order to do that, however, it must have all the facts before it as undisputed or admitted. (Vd. **Theocharous v. Pastelli** (1993) 1 CLR 240). And the scope of the dispute is specified by the facts which make up the claim. (Vd. **Sevegep Ltd v. United Sea Transport** (1989) 1 CLR (E) 729, **Mourtzinos Cruises Ltd** (1992) 1 CLR 1160). The matter of jurisdiction, as a matter of public policy, can be raised at any stage of the proceedings, even ex proprio motu.

Section 21 of the Courts of Justice Law 14/60 lays down the territorial jurisdiction of the Court.

"21(1)  Every District Court shall, subject to the provisions of section 19, have original jurisdiction to hear and determine all actions in accordance with the provisions of section 22 where -

   (a) the basis of the action has arisen either wholly or in part within the limits of the district in which the Court is established;

   (b) the defendant or any of the defendants, at the time of the institution of the action, resides or carries on business within the District in which the Court is established;

   (c) All the parties being Cypriot, either the basis of the action arose, in whole or in part, within the Sovereign Base Areas or the defendant or any of the defendants resides or carries on a business therein.

........................................................................................................

Relevant to the matter of jurisdiction is the interpretation section 2 of the same Law in which the following definition of the phrase "basis of the action" is given: section 21 (a) and (c):

"basis of the action" includes the totality of the facts founding the cause of action about which the action (has been brought), but in actions on contract does not necessarily mean the entire basis of the action. The basis of the action shall be considered to have arisen within the jurisdiction if the contract was made within it, even though the breach may have occurred elsewhere, and also if the breach occurred within the jurisdiction, even though the contract was made elsewhere."

For the matter vd. **Cyprus Broadcasting Corporation a.o. v. Andros Nicolaides** (1993) 1 CLR 364:

"The substance of the action is equated to the basis of the action as this is laid down in section 2 of L.14/60 and includes the totality of the facts which "form the foundation of the cause of action. " ..... "The action may have a unilateral or multilateral basis." .... O.13 of the Civil Procedure rules makes possible the setting out of two or more causes of action ...... Where two or more causes of action are joined together in the same judicial proceeding the substance of the action is comprised by the sum total of the causes of action."

The Statement of Claim is the exclusive source for seeking the jurisdiction of the Court. Here, the only think that is before me is the Generally Indorsed Writ of Summons under O.2, r.1. The Applicants' affidavit does not substantially admit the contract, its signature and the surrounding circumstances about where it was signed or completed or breached, if something like this did happen. Whatever was introduced later by Mr Polyviou's address in the form of argument, about the circumstances of its signature and the governing law cannot be taken into consideration since they were not put either in the Application or in the affidavit accompanying it. They remained theoretical and shall be totally ignored. (Vd. **Mitsui Co Ltd a.o. v. Rocwellmarie Ltd a.o.** (1989) 1 CLR 112) .

7

One of the issues in the present application is whether the Cypriot Courts have concurrent jurisdiction, jurisdiction which, as to one leg, the plaintiffs found on the signing of the Agreement in Cyprus. The other leg, that of breach of civil wrongs* remained substantially without support. This, however, would have been indifferent since it is enough to found jurisdiction even on one of the invoked bases of action. From the moment, therefore, that the facts are not admitted I conclude that I cannot come to a final conclusion as to which allegations are true or not (as to where and under what circumstances the Agreement was signed) and as a result on the basis of the material before me it would be premature to decide the matter of jurisdiction at this stage. This would lead to the conclusion that the Court would have judged the matter of the jurisdiction not on the basis of the Statement of Claim, which I note has not yet been filed, but on the basis of allegations contained in affidavits. That the Court will have to decide various points concerning the subject-matter agreement, without previously hearing evidence, that in the last analysis examining the circumstances of the making of the contract would be like deciding matters of credibility, which is not desirable at this stage.

O.19, r. 6 and O.27, r. 3 of the Civil Procedure Rules provide the base for the filing of an application to strike out a pleading. "The striking out of a pleading and especially a pleading by which the party invokes the exercise of the jurisdiction of the Court, is an exceptional measure, which is justified only if the pleading is considered unquestionably without foundation. Otherwise the striking out would also entail a breach of the right of a party to have recourse to a Court to which it is entitled to have recourse to under the Constitution, which is safeguarded by article 30.1 of the Constitution. (Vd. **In Re Pelmaco Development Ltd** (1991) 1 CLR 246, 355 and **Loizos Louka & Son Ltd v. National Bank of Greece S.A.** (1999) 1 CLR 1316).

It is my conclusion that this is not the proper case which would justify ending the process at its beginning. With all the data before me the dismissal of the action is not possible not even under the provisions of O.27, r. 3.

Remedy (c)

There remains one more matter: the staying of the action for the reason that the Cypriot Court is not the appropriate and/or competent jurisdictional forum to try the action.

In one of the more recent decisions of the Supreme Court **Zeeland Navigation Company Ltd  v. Banque Worms**, Petition for Review in Admiralty Action no. 51/98, dated 18.5.00, the principles governing *forum non conveniens* were analysed. The basic precondition is the existence of a possibility of choice between the Courts of at least two countries, in each of which the filing and trying of the action is possible. "The existence of a possibility of choice between the Courts of at least two countries, in each of which the filing and trying of the action is possible." As to the difference between the principles applying to cases where staying of the

---

\* **Translator's note:** the printed word is "wrongs", but, in my opinion, it is clearly a typing error. The word intended is "rights". The two words are similar in Greek.

8

proceedings or continuation of the proceedings in a foreign Court is sought, and those applying in cases of staying of proceedings in the case of contracts which incorporate an exclusive jurisdiction clause, Vd. **Phassouri Plantations    v. Adriatica** (1985) 1 CLR 290.

Here Mr Polyviou, and he acted very correctly in my opinion, did not support the existence of an exclusive jurisdiction clause. He introduced the point of the "primary" jurisdiction of the foreign Courts, as against the "secondary" jurisdiction of another Court and/or of the Cypriot Courts. Given this point and from a reading of the relevant provision, it can be safely concluded that indeed an exclusive jurisdiction clause is not incorporated, but concurrent jurisdiction is laid down. In my judgment, para. 15 of the subject-matter Agreement leaves to the parties the possibility of enforcing the Agreement in any other competent Court.

Stay may be granted only where the Court is satisfied that there exists another available forum, competent and appropriate to try the action and in which the case may be more conveniently tried in the interest of all parties. (Vd. **Spiliada Maritime Corporation v. Cansulex Ltd** (1986) 3 All E.R. 843), but that the stay must not deprive the plaintiff of a personal or procedural advantage (Vd. **Dolphin Shipping Co. Ltd v. Cartieri** (1984) 1 CLR 853).

The burden of proof, i.e. that the stay is imperative, is borne by the defendant in every case. "In addition he must show not only that Cyprus is not the appropriate forum, but that the other forum clearly or conspicuously is appropriate." Vd. **Zeeland** (supra), as well as the relevant English cases which are adopted therein.

Before forming a judgment as to the appropriate forum, continues the **Zeeland** decision, the Court has to weigh up a series of many matters with the applicable law an important one. But also other factors: the witnesses, the more facile conduct of the trial or the costs involved. But whichever those matters are they must "point the finger at the Court" with which the action has the closer and more realistic connection. (Vd. **The Abidin Daver** (1984) 1 All E.R. 470).

In **Spiliada** certain factors to be taken into account by the Court are enumerated, which are not exhaustive.

"the availability of witnesses ....., the law governing the relevant transaction ..., the places where the parties respectively reside or carry on business, and whether the plaintiff "can obtain justice in the foreign jurisdiction".

(Vd. also Petition for Review no. 132/97, **Lexicon Shipping Co Ltd v. Remontntowa Gdansk    Shiprepair Yard**, dated 19.7.00, where extensive reference to the case law is made, and to **Loizos Louka** (supra).

In the supplementary affidavit of the Applicants, which was filed with the leave of the Court and the concurrence of the Respondents, (is stated that) a significant number of witnesses, six in number, who will give evidence, are in the employment of the defendants (except one) and are residents of the USA. At the same time there is a significant number of documents and matters, which is to be found in the USA.

The side of the Respondents does not refer to a number of witnesses. Most of the evidence however is to be found in the Ukraine, their witnesses also. Most of the correspondence was carried out between the Respondents' office in Nicosia and the Applicants' office in England. That a significant number of documents is to be found in England is also adopted by the Applicants in their argumentation.

A comprehensive examination of the particulars put by each side, as also has been clarified by the advocates' addresses, reveals the necessity of production of evidence, oral or real from the Ukraine, Cyprus, the USA and England. Witnesses of the plaintiffs, as well as of the defendants, will have to travel either to the USA from the Ukraine and Cyprus, or from the USA to Cyprus. The correspondence or relevant documentary proof from England has, in my judgment, the same difficulty for both sides.

The plaintiffs have their seat in Cyprus and the defendants in the USA. The plaintiffs opted for the Courts of Cyprus, as they had the right to do. The fact that they contacted lawyers in the USA, in an effort for settlement which failed, does not show, I conclude, a choice of the foreign forum. In the end what is important is that no Action has been filed in the USA for the resolution of the dispute here, nor has there been, in my judgment, a submission to the jurisdiction of the Courts of Massachusetts. Further I do not find that the plaintiffs are engaged in "forum shopping". The plaintiffs had an option and they exercised it. Their effort for an out-of-court settlement in the USA cannot deprive them of the right of recourse to the Cypriot Courts. What is stated on the matter of the costs for the filing of an Action in the USA has not been disputed by the Applicants. The costs which would have to be paid in advance come to USA $300.000, with the possibility in the event the case progresses with delays to exceed $750.000. Costs which are not considered excessive in the circumstances of the USA. The Court has judicial knowledge of advocates' fees and of the applicable scales of fees in Actions before the District Court. I may, therefore, conclude that legal fees in the USA will, in the best circumstances, be very much higher than the costs to be incurred in Cyprus. In his address Mr Polyviou called on the Court not to place particular weight on this matter. The jurisdiction of the foreign Courts cannot be excluded, he stressed, only because of money and costs. I do not disagree, if this is the only criterion. The matter of the costs, however, is one of the matters which are assessed in the final weighing-up by the Court. The costs of the trial are relevant. (Vd. **Zeeland,** supra, and **Cheshire and North, Private International Law**, 12th edition, p.224).

Regarding the last allegation that the breaches occurred outside Cyprus. This argument does not help the Applicants either. Indeed the breaches appear from the affidavit accompanying the General Application to have been committed elsewhere, in the countries of delivery of the goods. Foreign, both to Cyprus and to Massachusetts. The matter, however, of the breach of the Agreement or of the delivery of the goods was not argued before me. It was mentioned totally superficially and, in the absence of evidence, cannot be examined in depth. But, even in this case, it does not help the Applicants either. If they (the breaches) have been committed elsewhere, outside Cyprus or Massachusetts, both Courts equally have no connection.

10

As regards the matter of the applicable law, I adopt what I have stated above in the context of the request to set aside the Writ of Summons.

Having in mind the above principles and after taking into consideration the materials before me, I come to the conclusion that the defendants have failed to satisfy me that Cyprus is not the appropriate forum and that Massachusetts is the most appropriate one. In reaching this conclusion I took into consideration also the following matters:

(a) that the plaintiff is a Cypriot company with its seat in Nicosia

(b) that the Contract was made in Cyprus

(c) that the plaintiff has the burden of proving the subject –matter Agreement and it carries the responsibility of adducing evidence to prove it

(d) that a number of witnesses, of the plaintiffs as well as of the defendants, will travel from abroad, the Ukraine and the USA. As difficult as it might be for the witnesses to travel from the USA to Cyprus, it is equally difficult to travel from Cyprus or the Ukraine to the USA

(e) that legal costs in the USA are very much higher than in Cyprus and touch the limit of being prohibitive for recourse to the Courts of Massachusetts.

It is, therefore, my final conclusion that the Applicant has not discharged the burden that Cyprus is not the most appropriate forum and consequently the alternative request for stay of the proceedings cannot be granted.

The application is dismissed.

The costs of the application (are awarded) against the Applicants, but to be paid at the end of the case.

(sgd) ................................
D. Michaelidou P.D.C.

True Copy

Registrar

This is Exhibit .....A.G.4.6.B...
referred to in the
affidavit of ................................
....A.N.D.R.E.A.S...G...L.A.D.A.S
dated .........20./.5./2.0.0.5...
................................
Registrar



AKYPON

11