UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| In re Application of<br><br>Kayat Trading Limited,<br><br>Petitioner,<br><br>for an Order to Take Discovery of<br><br>Genzyme Corporation,<br><br>Respondent,<br><br>Pursuant to 28 U.S.C. § 1782 | C.A. No. 05-MBD-10147-GAO |

## AFFIDAVIT OF KONSTANTIN MESHKOV

I, the undersigned, Konstantin Meshkov of Nicosia, Cyprus, make oath and say as follows:

1.     I am Director of the Petitioner, Kayat Trading Limited ("Kayat"), and have acted in this capacity since August 1997.  As Kayat's Director I have ultimate responsibility for supervision and control of the company's affairs.

2.     The facts and matters to which I refer in the Affidavit are true to the best of my knowledge, information and belief, and, unless otherwise stated, my knowledge, information and belief derives from my personal knowledge and from Kayat's papers, documents, and records.

3.     I have reviewed the pleadings filed both in Cyprus and in this proceeding by Kayat and by the Respondent, Genzyme Corporation ("Genzyme").  I have also read the transcript of the hearing held in this matter before the Honourable United States District Court Judge O'Toole on 23 May 2005.

1

4.    As this Court is aware, in July 2002 Kayat filed action against Genzyme in Cyprus for breach of contract resulting from Genzyme's failure to deliver the quality or quantity of MelaPure brand melatonin required under the parties' exclusive distribution agreement. Kayat's causes of action also include claims for common law fraud, violation of the Massachusetts Consumer and Business Protection Act and violation of the federal Racketeer-Influenced and Corrupt Organization Act. These latter three claims result from Genzyme's discontinuance of MelaPure production shortly after signature of the Kayat distribution agreement at the same time its management in Boston was encouraging Kayat's sales efforts in the Ukraine and former Soviet Union.[1]

5.    I believe that essential information relevant to Kayat's claims is located at Genzyme's headquarters in Cambridge, Massachusetts. Such information includes, for example: (a) Genzyme's historical and forecast levels of melatonin sales; (b) Genzyme's plans for the sale of melatonin into the countries of the former Soviet Union including its registration of MelaPure as a licensed medicine in Russia and Ukraine; and (c) Genzyme's internal communications about its plans for discontinuance of melatonin production and its business dealings with Kayat.

6.    In my opinion, it is plainly inaccurate for Genzyme to suggest (as it seems to me they do) that Kayat is trying to obtain an unfair advantage in the Cyprus action through this discovery proceeding in the United States. In fact, I believe that the opposite is true – by seeking to frustrate the production of information solely and uniquely in its possession, Genzyme hopes to preclude Kayat from establishing its claims.

7.    I believe it is Kayat – not Genzyme – that has a legitimate concern about achieving "parity" through these Section 1782 proceedings. Genzyme is already quite well aware of the evidentiary basis for Kayat's claims, including particularly the so-called "Ukrainian evidence."

2

In February 2001 Kayat provided Genzyme with an extensive compilation of the documents upon which the Cyprus action is based. I attach a copy of that compilation as Exhibit "KM-1."

8.      I consider Genzyme's arguments regarding its inability to obtain evidence from the Ukraine to be specious. Upon Genzyme's application and after clinical study, Melapure melatonin was registered in Genzyme's name as a licensed medicine by the Ukraine Ministry of Health. Evidence regarding regulatory compliance and the nonconformity of Genzyme's subsequent shipments is in the possession of State organisations and governmental authorities independent of either party.

9.      However, to the extent Genzyme may have a concern (albeit, in my opinion, an exaggerated concern) about the production of testimony related to Kayat's commercial activities in the Ukrainian market, Kayat will be pleased to consent to U.S.- style discovery under the supervision of the U.S. Court within the context of these proceedings now pending under 28 U.S.C. § 1782.

10.      Specifically, Kayat is willing and able to identify and produce the evidence on which it intends to rely at trial in Cyprus as well as relevant information reasonably calculated to lead to the discovery of admissible evidence. Additionally, Kayat is willing and able to coordinate and arrange for depositions of those witnesses listed below upon whose testimony it may rely at trial in Cyprus, at a time and in a manner reasonably acceptable to Genzyme.

11.      Therefore, in order to comply with what I am advised are the terms of the United States Federal Rules of Civil Procedure ordinarily governing discovery in the U.S. federal courts, Kayat now makes the following initial disclosures pursuant to Rule 26 (a)(1):

---

[1] See Affidavit of Andreas G. Ladas, March 23, 2005 ("Ladas-1"), Exhibits AGL4A and AGL4B,    pp.00369-00428.

**A.**     FRCP Rule 26(a)(1)(A): (individuals likely to have discoverable information)

(1)  Achkar, Huguette – 2555 Havre des Isles, Chomedey, Quebec, Canada; former Director, Kayat Trading Limited

(2)  Chumak, Victor – 18 Chegorina Street, Kiev, Ukraine; Director, State Center of Expertise of Medical Preparations

(3)  Delikatnaya, V. – 24/7 Institutskaya Street, Kiev, Ukraine; Commercial Director, Medical Commerce

(4)  Evlah, Aleksey – 5 Arsenalnaya Street, Kiev, Ukraine; General Director, Interservice

(5)  Kondrashkin, Alexander – 30/A Kikvidze Street, Kiev, Ukraine; Director, 000 ANIT

(6)  Kotenko, Alexander – 50 Popudrenko Street, Kiev, Ukraine; Head of Laboratory, State Laboratory for Medication Quality Control

(7)  Ladas, Andreas – 67 Kennedy Ave., Suite 301, CY-1087 Nicosia, Cyprus; Counsel, Kayat Trading Limited

(8)  Meshkov, Konstantin – 47, 28th October Ave. Makedonitissa, Cyprus; Director, Kayat Trading Limited

(9)  Parshina, Nadezhda – 17/19 Gonchara Street, Kiev, Ukraine; Director, State Inspection for Quality Control of Medicines

(10) Rybchuk, Victor – 7 Grushevenovo Street, Kiev, Ukraine; First Deputy Minister of Health, Ukrainian Ministry of Health

(11) Spizhenko, Yurii – 18 Chegorina Street, Kiev, Ukraine; President, Pharmaceutical Association of Ukraine

(12) Tsvetkov, Alexander – 9/B Borispolskaya Street, Kiev, Ukraine; Director, CERTA

**B.** FCRP Rule 26(a)(1)(B):  (documents, data and things)

(1) correspondence with Genzyme Corporation and related documents maintained in document files located at 47, 28th October Avenue, Makedonitissa, Cyprus;

(2) correspondence with ANIT, Medical Commerce and CERTA and related documents maintained in document files located at 47, 28th October Avenue, Makedonitissa, Cyprus;

(3) financial journals, invoices and receipts maintained in document files located at 47, 28th October Avenue, Makedonitissa, Cyprus;

(4) miscellaneous sample bottles of MelaPure melatonin (English, Russian and Ukrainian language labels) located at 47, 28th October Avenue, Makedonitissa, Cyprus;

(5) photographs of boxes of MelaPure melatonin held in storage in Kiev, Ukraine located at 47, 28th October Avenue, Makedonitissa, Cyprus;

(6) videotape of Ukrainian television commercial for Melapure melatonin featuring former Soviet national football team captain, Vladimir Bessonov located at 47, 28th October Avenue, Makedonitissa, Cyprus; and

(7) videotape of Ukrainian television program "Planet of Health" featuring discussion of MelaPure melatonin located at 47, 28th October Avenue, Makedonitissa, Cyprus.

**C.**       FRCP Rule 26(a) (1) (C): (computation of damages)

Although I am advised by Kayat's Cypriot counsel that under the laws and procedure of Cyprus a plaintiff is not required to specify the precise amount of its damages prior to trial, Kayat has already elaborated on its computation of damages in its Statement of Claim filed on 24 November 2004.[2] Subject to discovery, particularly from

---

[2] See generally Ladas-1, Exhibit AGL4B

Kayat's sub-distributors noted above and from Genzyme (as to unjust enrichment, among other things), Kayat's computations may be summarized as follows:

    (1)   special damages in the amount of U.S.$ 656,256.[3]

    (2)   compensatory damages calculated as the profits expected under the Distribution Agreement and lost to Kayat because of Genzyme's failure to perform under the contract and its failure to support sales of melatonin as represented. Based solely on existing contractual purchase commitments, Kayat's minimum expected sales were between 96,000 and 115,000 bottles of MelaPure per month at a gross profit of between approximately U.S. $1.1 and U.S. $1.3 million.[4]

    (3)   treble damages pursuant to Massachusetts General Laws Chapter 93A as well as the federal Racketeer-Influenced and Corrupt Organizations Act.[5]

    (4)   interest and costs, plus V.A.T.[6]

12.    As outlined above, Kayat is ready, willing and able to provide Genzyme with an effective opportunity for the reciprocal discovery it argues is appropriate in this proceeding and unavailable in the Cyprus action. Under these circumstances, I respectfully ask this Court to approve a discovery plan that will provide Kayat with the same opportunity for efficient and effective discovery of the documents, data and persons located in Massachusetts. `

THE AFFIANT

Konstantin Meshkov

Sworn and signed before me
in the District Court of Nicosia
on ................. 2005

REGISTRAR
Costas P. Kades

---

[3] Ladas-1, Ex. AGL4B, p. 00410 and pp. 00427 - 00428
[4] Ladas-1, Ex. AGL4B, pp. 00408 - 00411
[5] Ladas-1, Ex. AGL4B, pp. 00420 - 00426
[6] Ladas-1, Ex. AGL4B, p. 00428

# EXHIBIT 'KM-1'



This is Exhibit..KM-.1...
referred to in the
affidavit of....Mr
Konstantin Meshkov
dated .23/.7./.2005...

Registrar
Costas P. Kades